## LESLIE *vs.* LANGHAM'S EXECUTORS.

[ACTION ON NOTE GIVEN FOR HIRE OF SLAVE.]

1. *Cross assignments of error.*—The appellee will not be allowed, even with the consent of the appellant, to make cross assignments of error, unless he reserved a bill of exceptions to the rulings of the court below; and it is not sufficient that his exceptions are stated in the appellant's bill.

2. *Presumption in favor of affirmative charge.*—Where the bill of exceptions does not purport to contain all the evidence that was introduced on the trial, an affirmative charge will be presumed to have been justified by the evidence, unless the evidence which is set out shows that it is erroneous.

3. *Hiring of slave; loss of services.*—In the absence of an express stipulation in a contract for the hiring of a slave, the hirer must bear all losses which occur during the term, except those which are caused by the act or conduct of the owner.

4. *President Lincoln's emancipation proclamation of January,* 1863; *abolition of slavery.*—Slavery was destroyed in this State, by force of arms, in May, 1865; and prior to that time, whether Alabama was in or out of the Union, the emancipation proclamation issued by the president of the United States in January, 1863, had no force here.

5. *Parol agreement for discharge of note in Confederate money.*—Where a promissory note, given for the hire of a slave for the year 1865, on its face was payable in money, a parol understanding between the parties, that it might be paid or discharged in Confederate States treasury-notes, cannot be received to defeat a recovery on it: the ordinance of the State convention, No. 26, adopted on the 28th September, 1865, does not apply to such case.

6. *Abstract charge.*—A charge which is abstract, may be refused on that ground.

APPEAL from the Circuit Court of Wilcox.
Tried before the Hon. JOHN K. HENRY.

THIS action was brought by the executors of L. L. Langham, deceased, against John W. Leslie, and was commenced on the 16th April, 1866. The complaint alleged, that the plaintiffs, as executors, claimed of the defendant the sum of three hundred and ninety dollars, " due by promissory note made by him and one J. M. Harrington, on the 2d day of January, 1865, and payable on the 1st day of January, 1866, for the hire of a negro slave, named William, for the year 1865." The defendant pleaded, "that he does not owe the said sum of money in said complaint named, nor any part thereof"; and issue was joined on that plea. The trial was had by consent, at the April term, 1866, when the following bill of exceptions was reserved:

" On the trial of this cause, which was an action on a promissory note given for the hire of a slave for the year 1865, it was agreed by and between the parties, that the negro named in the complaint, and in the note which was the foundation of the suit, was born a slave, and was held and claimed as such by the plaintiffs, as executors of L. L. Langham, deceased, on the 2d day of January, 1865, under the laws of Alabama; that said slave passed into the possession of the defendant, on the 2d day of January, 1865, under the contract of hiring as set out in the complaint, and remained in his possession until the 1st day of May, 1865, when the military authorities of the United States took possession of the country; and that the negro then left the defendant's service, of his own accord, without any act or fault on the part of either of the parties to this suit, and returned to that service no more. The

33

plaintiffs then read in evidence to the jury the note sued on, without objection. The parties waived all questions as to the jurisdiction of the court, predicated upon the amount of the verdict; and the plaintiffs then closed. The defendant then read in evidence President Lincoln's emancipation proclamation, dated the 1st January, 1863; and offered to prove, by parol evidence, the comparative value of Confederate currency at the date of the contract, and the present national currency, or par funds. To the introduction of this testimony the plaintiffs objected; but their objections were overruled, and the evidence admitted; to which the plaintiffs excepted. The defendant then offered parol evidence, tending to show that, at the date of said contract, it was understood by and between the parties that the same was to be paid and discharged in Confederate currency or treasury-notes; to which testimony the plaintiffs objected, but their objection was overruled, and the testimony admitted; to which the plaintiffs excepted.

"The court charged the jury, among other things, that under the agreed state of facts, and the other evidence in the case, if they believed that the note sued on, according to the contract, was to be discharged in Confederate treasury-notes, they might ascertain, from such proof and agreed state of facts, what was the true value of the consideration of the note, and what amount the plaintiffs were justly, legally, and equitably entitled to recover in par funds, according to said contract, for and during the time the defendant actually received the services of the negro, to-wit, from the date of the hiring to the surrender of General Taylor to the United States forces, in May, 1865, and render a verdict in their favor for that amount; to which charge the defendant excepted.

"The plaintiffs then asked the court to instruct the jury, that if they believed the evidence, the plaintiffs were entitled to recover the full amount of the note sued on; which charge the court refused to give, and the plaintiffs excepted to its refusal.

"The plaintiffs then asked the court to charge the jury, that if they believed the evidence, the plaintiffs were entitled to recover the full amount of the note sued on; which

charge the court refused to give, and the plaintiffs excepted.

"The plaintiffs then asked the court to charge the jury, that if they believed the evidence, the plaintiffs were entitled to recover for the hire of the negro up to the date of the ordinance, No. 6, adopted by the State convention on the 22d September, 1865 ; which charge the court refused to give, and the plaintiffs excepted.

" The defendant then asked the court to charge the jury, that if they were satisfied, from the evidence, that it was understood between the parties, at the date of the contract, that the same was to be discharged in Confederate States treasury-notes, the contract was contrary to public policy, and was null and void ; which charge the court refused to give, and the defendant excepted.

" The defendant then asked the court to charge the jury, that if they were satisfied, from the evidence, that it was understood between the parties, at the date of the contract sued on, that the same was to be discharged in Confederate treasury-notes, the contract was contrary to public policy, and was null and void ; which charge the court refused to give, and the defendant excepted.

"The defendant then asked the court to instruct the jury, that by virtue of the proclamation of President Lincoln, dated the 1st January, 1863, all slaves in the States then in rebellion, in contemplation of law, became free ; and that if the boy William was hired as a slave, and without his consent, the contract of hiring was void ; which charge the court refused to give, and the defendant excepted.

"The defendant then asked the court to charge the jury, that the third section of the ordinance of the State convention, No. 26, adopted on the 28th September, 1865, contained provisions impairing the obligation of contracts, and, to that extent, was void ; which charge the court refused to give, and the defendant excepted."

The appeal is sued out by the defendant, and the errors assigned by him are the several rulings of the court to which he reserved exceptions. By consent, entered of record, it was agreed that the appellees might assign errors, "to the same extent as if they had appealed from the judgment and rulings of the court below"; and under this

agreement the appellees assign as error all the rulings of the court below to which, as above stated, they excepted.

PETTUS & DAWSON, for appellant.

R. C. TORREY, contra.

BYRD, J.—1. The appellees have made an assignment of errors, with the consent of appellant. It does not appear that they took any bill of exceptions; and under the law, and the consent endorsed on the record, they have no right to assign errors on the bill taken by the appellant.—Code, § 2354.

2. The promissory note upon which the suit was brought is not set out in the record, and we must construe it as it is set out in the complaint. The bill of exceptions does not purport to set out all the evidence introduced on the trial; and in the absence of a copy of the note, and of the evidence introduced, we cannot hold that the court below erred in the charge given.

3. It has long been settled in this State, that the hirer of a slave for a fixed period becomes a purchaser of the slave for that period; and that if the slave dies before its expiration, the loss for the balance of the term of hiring must be borne by the hirer. A recovery for the entire amount of the contract cannot be defeated, by showing that the hirer was prevented by the act of God from deriving a profit from the services of the slave.—*Ricks v. Dillahunty*, 8 Porter, 133; *Outlaw et al. v. Cook*, Minor, 257. In the latter case, the court say: "The tenant or hirer is considered as a purchaser for a limited time, and takes the property subject, during the continuance of the interest, to the same risks as if he were the purchaser of the fee simple." If the court below erred on this question, it was in favor of the appellant. In the absence of any stipulation controlling the matter, we are satisfied that the hirer must bear all losses which occur during the term of hiring, unless they are occasioned by the act or conduct of the owner of the slave, or the person from whom the hirer employed him; and this we conceive to be true as a general rule.

4. In the case of *Jeffreys and Jeffreys v. The State*, decided

at the January term, 1866, we held, that slavery in this State was destroyed in May, 1865. Whether the State was in or out of the Union at the issuance of the proclamation of President Lincoln, in January, 1863, makes no distinction or difference. If in the Union, he had no constitutional authority, nor had congress any to confer on him, to issue and enforce it at that time ; and if out of the Union, *in either case*, it could have no force or validity until the Federal government was enabled by conquest, or the power of arms, to enforce it. Under the law as above announced, the appellee was entitled to recover ; and we are unable to see that the appellant has any cause of complaint as to the amount of the recovery.

5. Though the court permitted evidence to go to the jury, to show that it was understood between the parties that the note was to be paid in Confederate treasury-notes; yet we must presume from the complaint, and the fact that proof was made of such understanding, that the note did not so stipulate ; and the court did not therefore err, in refusing to give the first charge asked by the appellant. The effect of such a charge would be to authorize the interpolation of a stipulation which was not a part of the written contract. The subject of the contract was the hire of a slave, which at the time was lawful; if it had not been, parol evidence would have been admissible to show that it was not. A parol understanding to receive Confederate treasury-notes in payment, when the contract is written, and lawful, and payable in money, is not a part of the contract, and, therefore, not obligatory on either party thereto.

It is true that an ordinance of the convention of 1865 authorizes the courts to inquire into the consideration of a contract, and that the parties contracted to pay and receive Confederate treasury-notes in discharge of the contract ; but this was permitted for the purpose of ascertaining the amount of the recovery, and not to defeat it *in toto*. For the former purpose, the evidence *might have been* admissible, but in no event for the latter.—Addison on Contracts, pp. 148, 841-2.

6. The last charge asked by the defendant was abstract,

and, so far as we can see, the refusal to give it was beneficial to appellant; and if correct as a general proposition, the refusal to give it worked no injury to him.

It only remains for us to say that there is no error in the record, of which appellant can complain, and that the judgment must be affirmed.