# Nelson *v.* McCrary *et al.*

## *Statutory Action in nature of Ejectment.*

1. *Common law and English statutes; how far of force here.*—The ancient common law of England, in its entirety, never prevailed here, but only such parts of it as were not inconsistent with our institutions and public policy, as deduced from statutory and constitutional provisions; and English statutes, enacted prior to the immigration of our ancestors to this country, prevailed to the same extent, as a part of that common law.

2. *Liability of lands to payment of debts.*—The subjection of lands by legal process to the payment of debts is not, in Alabama, the mere consequence of statutory remedies, which the legislature may wholly take away, or practically abrogate. The statute of 13th Edw. 1, ch. 18, which gave a judgment creditor a writ of *elegit* against his debtor's lands, was in force here, as a part of the common law, during the five years of organized government which preceded its re-enactment in substance by the act of 1807 (Clay's Digest, 199, § 1). The settled law and policy of the State has always been to subject lands, equally with personal property, to the payment of debts; and while the legislature may change, modify, or enlarge existing statutory remedies, it cannot, without violating the Federal constitution, take away all remedy for the enforcement of existing contracts, nor substitute new remedies which impair the value and benefit of such contracts.

3. *Homestead exemptions; governed by what law.*—The right to a homestead exemption, as against the claims of creditors, is to be determined by the law which was of force when the debt was contracted, and not by a subsequent law which was of force when the property was acquired : such subsequent statute, when enlarging homestead exemptions, can not operate on existing contracts without impairing their obligation.

4. *Same.*—As to debts contracted after its adoption, the constitution of 1868 superseded all former exemption laws, and governed all homestead rights until the passage of the act approved April 23, 1873, which enlarged the homestead from eighty to one hundred and sixty acres; but, as against debts contracted in 1872, this statute can not apply, so as to give the enlarged homestead in lands acquired after its passage.

5. *Sale of lands under execution, subject to claim of homestead exemption.* —The statute regulating the assignment of a homestead, when claimed by a defendant in execution (Rev. Code, § 2881), applied only to the homesteads which were exempted by the laws of which it was a part, and was directory merely: a failure on the part of the sheriff to comply with its provisions was a mere irregularity, which might be a ground for an application to set aside the sale, but did not invalidate the title of the purchaser, who bought subject to the claim of a homestead exemption.

6. *Cross assignments of error.* —In a case at law, there is no rule of practice, which allows the appellee to assign errors on the record, on account of adverse rulings of the court below shown by the appellant's bill of exceptions.

APPEAL from the Circuit Court of Hale.

Tried before the Hon. GEORGE H. CRAIG.

This action was brought by James W. McCrary, John E. Love, and William G. Miller, against Jabez C. Nelson, to recover the possession of a certain tract of land, containing one hundred and forty acres, which was described in the complaint as " the north half of the south-west quarter of section fifteen (15), and the south-west quarter of the north-west quarter of section fifteen (15), and the east half of the south-east quarter of the north-east quarter of section sixteen (16), in township nineteen (19), range four (4) east;" together with damages for its detention. The defendant pleaded " not guilty, in short by consent, with leave to give in evidence any special matter in bar ;" and the trial was had on issue joined on this plea.

The plaintiffs derived their asserted title to the land under a purchase at sheriff's sale, made on the 31st July, 1876, under two executions against the defendant, hereinafter more particularly described ; and they produced and proved the sheriff's deed, the executions with their levies, the judgments on which the executions were issued, and the debts on which the judgments were founded. The defendant claimed the land as a part of his homestead exemption, and also insisted that the sheriff's sale and deed were void. One of the two judgments, under which the land was sold by the sheriff, was in favor of said James W. McCrary ; was rendered on the 3d April, 1873, for $278.96, and was founded on the defendant's promissory note for $258.24, dated the 25th March, 1872. An execution on this judgment was issued on the 29th April, 1873, which was returned " No property found ;" and an *alias* was issued on the 6th June, 1876, which was levied on the land in suit. The other judgment was in favor of said John E. Love and William G. Miller, and was rendered on the 21st April, 1876, for $430.17, the balance due on a promissory note, signed by the defendant (with two others), and dated the 15th October, 1872. An execution was issued on this judgment on the 18th May, 1876, and was levied on the lands in

controversy. Besides the lands now sued for, said executions were at the same time levied on another tract containing twenty acres, on which were situated the defendant's dwelling-house, out-houses, etc., and which was described in the levy as "the south half of the north-east quarter of the south-east quarter" of said section sixteen. The lands levied on, containing in all one hundred and sixty acres, were sold and conveyed to said defendant by James W. Locke and wife, by deed dated 22d December, 1874, which recited a consideration of $2,500. They lay in one contiguous tract, except that the twenty-acre parcel, on which the buildings were situated, was separated from the other portions by a tract containing forty acres, which belonged to the defendant's wife; and, with said forty acres, making two hundred acres in all, were used and cultivated by the defendant as his homestead farm or plantation, on which he also resided. There were no houses, or buildings of any kind, on any part of the land sued for, all the improvements being placed on the twenty acres on which the dwelling-house was situated.

The executions were levied on the 7th June, 1876; and on the 14th June the defendant filed with the sheriff an affidavit and claim of exemption to the lands, as "exempt to him under the constitution and laws of Alabama, as an actual *bona fide* resident and the head of a family." On the 31st July, 1876, the day of the sale, the defendant read to the crowd a written notice, forbidding the sale, and asserting his claim to the lands as his homestead exemption; claiming eighty acres of the tract, which were described by their numbers, as exempt under the constitution, and the other eighty acres as exempt under the act approved April 23, 1873. The sheriff proceeded with the sale, and sold the entire tract of land, dividing it into two parcels of eighty acres each; and the plaintiffs in execution became the purchasers of each tract, at the price of $5.00 for the parcel which included the dwelling-house, and $50.00 for the other parcel. The sale was declared to be made "subject to all claim of exemption by the said J. C. Nelson under the constitution and laws of Alabama," and was so expressed in the sheriff's deed to the purchasers. The value of the entire tract, comprising the twenty acres on which the houses were situated, was estimated by the witnesses at from $1,600 to $2,000.

The above being, in substance, the material facts disclosed by the evidence, several charges in writing were requested by each party, some of which were given by the court, and others refused; each party reserving exceptions to the refusal of the charges asked by himself, and to the charges given at the instance of his adversary. The charges to which excep-

tions were reserved by the defendant, and which he here assigns as error, instructed the jury, in effect, that the constitution of 1868 repealed all exemption laws then of force, except as to existing debts; that the constitution only exempted eighty acres as a homestead, and was the only exemption law in force up to the passage of the act approved April 23, 1873, except as to debts existing when that constitution became operative; that the said act of 1873, enlarging the homestead to one hundred and sixty acres, did not apply as against debts created prior to its passage, although they were reduced to judgment after its passage; and that the failure of the sheriff to have the homestead appraised and set apart by metes and bounds, under the claim of exemption, was a mere irregularity, which did not invalidate the sale, and was not available in defense of this action. Under the charge of the court, the jury returned a verdict for the plaintiffs for eighty acres of land.

WM. G. JONES, for the appellant.—1. In the consideration of cases involving questions of homestead exemptions, two cardinal principles should be kept constantly in view, and properly applied: 1st, that by the common law lands were not subject to levy and sale under legal process for the collection of debts; 2d, that exemption laws are liberally construed in favor of the debtor. The first proposition is too well settled to require argument.—3 Bla. Com. 418, mar. p.; 2 Washburn's Real Property, 26, 27; 4 Howard, 77; *Hendon v. White,* 52 Ala. 601; 3 Ala. 560; 11 Ala. 995; 1 Brickell's Digest, 899, § 131. For the rule as to the liberal construction of exemption laws, which is equally well settled, both here and in other States, see *Watson v. Simpson,* 5 Ala. 233; *The State v. Johnson,* 12 Ala. 840; *Ross v. Hannah,* 18 Ala. 125; *Favers v. Glass,* 22 Ala. 621; *Allman v. Gann,* 29 Ala. 242; *Webb v. Edwards,* 46 Ala. 23; Freeman on Executions, § 208, and cases there cited; Smyth on Homesteads, 49–54, §§ 2–11.

2. The constitution of 1868 repealed by implication all laws then existing which were repugnant to its provisions; but the laws then existing, exempting homesteads in the country from levy and sale under execution, were not repugnant to any of its provisions, and were not repealed by it. The convention which framed that constitution certainly did not intend to repeal by it all existing exemption laws, and did not suppose that it had done so; else why adopt, on the next day, an ordinance expressly repealing the exemption laws then in force? This ordinance shows the construction which the convention itself put on the constitution, and their

[Nelson v. McCrary et al.]

intention in adopting it, though it may have had no validity as a repealing law; and it was itself repealed—1st, by implication, by the act of July 29, 1868, adopting all the laws in the Code not in conflict with the constitution; and, 2d, by express words, by the act approved December 1, 1868. In *Miller v. Marx*, and other recent cases, this court has decided that the homestead exempted by the constitution may be enlarged by the legislature; and it was enlarged by the adoption of the laws contained in the Revised Code, which gave three hundred and twenty acres in the country to every head of a family, as the defendant was in 1872. Besides, the repeal of the repealing ordinance, by operation of law, revived the laws which had been repealed by it.—1 Kent's Com. 515–16, mar. p.; Potter's Dwarris, 159. This court, in the cases above referred to, decided that section 2061, subdivision 6, and section 3539 G, Revised Code, were repugnant to the constitution of 1868, and were repealed by it, but said nothing about sections 2880 and 2884; and these latter sections were expressly mentioned and repealed by the act approved April 23, 1873, which clearly shows that the legislature considered them as then of force. These laws being of force in 1872, when the plaintiffs' debts were contracted, if the subsequent act of 1873 does not apply to the case, determined the extent of the homestead right; and the court erred in holding that it was governed only by the constitution of 1868.

3. But the act of April 23, 1873, applies to debts previously contracted, and is not unconstitutional. It is a reasonable exemption law, passed in good faith, and affects only the remedy. No case can be found, which holds such a law to be unconstitutional. It is sustained on the same principle which applies to statutes of limitations, laws abolishing imprisonment for debt, changing the rules of evidence, regulating attachments, and others, which affect the remedy only. Cooley on Constitutional Limitations, 1st ed., 287–8; Smyth on Homesteads, &c., 61–69, and cases there cited; *Bronson v. Kinzie*, 1 Howard, 311; 6 Howard, 301; *Van Hoffman v. Quincey*, 4 Wallace, 552; *Sneider v. Heidleberger*, 45 Ala. 126–34; *Garrett v. Chesire*, 69 N. C. 397. The principle is well settled, that State legislatures may pass remedial laws, changing, modifying, and regulating the remedies on contracts; that such laws do not impair the obligation of the contract, within the prohibition of the Federal constitution, and that they apply to future remedies on debts previously contracted. If, under the false pretense of regulating the remedy, a State law attempts, in effect, to take away a lien which a creditor has already acquired, or to deprive him of

(20)

all remedy for the collection of a pre-existing debt, such law impairs the obligation of his contract, and is void. But, if a law is passed in good faith, to regulate future remedies, making a reasonable exemption for an impoverished debtor, and leaving a substantial remedy to the creditor, it will be sustained, and applied to existing debts. The intent and reasonableness of the law, to be gathered from itself and the circumstances under which it was passed, are the test of its constitutionality; and a judicious application of this test will reconcile most of the conflicting decisions on this question.

Submitted to this test, the cases of *Gunn v. Barry* (15 Wallace, 610), and the Virginia *Homestead Cases* (22 Grattan, 266), were correctly decided. In the former case, from Georgia, the debtor was in possession of the land in 1866, when his creditor recovered judgment against him; which judgment was, by the laws of Georgia, a lien on the land. The land contained about two hundred and seventy acres, and was worth about $1300; and the exemption law allowed the debtor to claim fifty acres as the head of a family, and five acres additional for each child under sixteen years of age, but not exceeding in all $200 in value. By the constitution of 1868, and laws passed under it, the homestead exemption was extended from $200 to $2,000 in value, and was unlimited in quantity. Of this law, the Supreme Court of the United States said : " Under the circumstances of this judgment, the effect of the act does not merely impair, it annihilates the remedy : there is none left." In Virginia, prior to 1870, there was no homestead exemption, and only a few articles of personal property were exempt; while the constitution of 1870, and laws passed under it, exempted all the debtor's property, real and personal, to the amount of $2,000 ; and the law was held invalid, as to existing debts, on account of this enormous and excessive increase. Unlike the Georgia and Virginia statutes, our act of 1873, in its practical effect, reduced the homestead in all cases where the value of the land was less than $12.50 per acre, and only increased it in the comparatively few cases where the land was worth more than that sum. For, under the laws which were repealed by that act, three hundred and twenty acres were exempted, not exceeding $1700 in value ; while that act reduced the exemption to one hundred and sixty acres in extent, without limit as to value. Statistics show that the average value of the lands throughout the State is much less than $12.50 per acre ; so that this law, in its practical operation, was highly beneficial to creditors in a great majority of cases, and largely increased their remedies. How, then, can it be held that the intention

of the legislature in passing that act, or the act itself, in its practical effect, is to impair the obligation of contracts, or abridge the creditor's remedy? It is not even necessary to invoke the principle, applied only in doubtful cases, that presumptions are to be indulged in favor of the good faith of the legislature and the validity of the law.

4. But the lands in this case were not acquired by the defendant until long after the passage of the act of 1873. The plaintiffs had no lien on them, and they can not be supposed to have given credit to the defendant in 1872, on the faith of lands which he did not then own, never had owned, and might never own. This court held, in *Miller v. Marx*, and other cases above referred to, that the changes made by the act of 1873 "operate on all homestead exemptions which have accrued since April 23, 1873"; which is decisive of this case. No case can be found in the books, which holds a homestead, acquired after the passage of a law exempting it from levy and sale under execution, liable to such levy and sale for debt, whether contracted before or after the passage of the law. In all the cases cited to the contrary, the debtor had owned the lands at the time the debt was contracted, or before the passage of the law creating or increasing the exemption.

5. A part of the land levied on was undoubtedly exempt, and the defendant's claim to at least twenty acres, including the dwelling-house, is admitted. The claim of exemption was regularly made and filed, and notice thereof was given at the sale. It was the duty of the sheriff, under these circumstances, if he thought the claim legal and valid, to recognize it, and refuse to sell; or, if he thought the claim excessive, then to summon there disinterested freeholders to value the land, and, if necessary, to set apart the homestead by metes and bounds. Failing to do this, the sale is void, and passed no title to the purchaser.—Freeman on Executions, 462–67, 475, 545; *Deloach v. State Bank*, 27 Ala. 437–45; *Ronkendorf v. Taylor's Lessee*, 4 Peters, 349, 363; *Henry v. Mitchell*, 32 Mo. 512; *Dearmond v. Courtney*, 12 La. Ann. 251; *Gantley v. Ewing*, 3 Howard, 707; *Smith v. Cockrill*, 6 Wallace, 756; *Vogler v. Montgomery*, decided by the Supreme Court of Missouri, January, 1874, and reported in Central Law Journal, vol. 1, p. 65; *Collier v. Stanbrough*, 6 Howard, 14. As to the exempt portion of the land, there can be no doubt that the sale was void—that the sheriff had no more power to make the levy or sale, than if the property had belonged to a third person. It is not a mere irregularity in the exercise of a lawful power, but an utter want of any power or authority whatever; and if the exempt property had been personal,

the defendant might have maintained trespass or trover against the sheriff, or trover or detinue against the purchaser.—5 Ala. 233 ; 9 Ala. 469 ; 18 Ala. 125 ; 22 Ala. 621 ; 37 Ala. 350; 29 Ala. 240 ; 42 Ala. 226 ; 45 Ala. 454. As to the residue of the land, the sale was void for indefiniteness and uncertainty, and for the failure to comply with express statutory provisions, as shown by the authorities above cited. Public policy, which all statutory provisions are intended to effectuate, requires that, in making sales under judicial process, every thing should be done which is necessary to make the property bring a good price, and thus prevent such a sacrifice as is shown by the record in this case.

Thos. J. Seay, contra.—1. "The homestead exemption provided in the constitution, from debts contracted after its adoption, is incompatable with that provided for by the Revised Code, section 2061, subd. 6, and section 3539 G. The two can not stand and be administered together. The constitution repealed all previous statutory homestead exemptions from debts contracted after its adoption."—Miller v. Marx, and Anthony v. Anthony, at the last term. Sections 2880 and 2884, on which the appellant here relies, are not expressly mentioned in this extract from the opinion of this court, but they fall within the same principle, and must be held repealed by the constitution of 1868 ; and they were expressly repealed by the act of April 23, 1873, and were not even operative as to debts contracted prior to the adoption of the constitution of 1868 when the sale in this case was made.

2. The exemption laws which are in force at the time a debt is contracted, become a part of the contract itself, and adhere to it until the debt is paid ; and the homestead right, whenever it is claimed, is admeasured by that law.—Miller v. Marx, and Anthony v. Anthony, supra. That the property, in which the exemption is claimed, is acquired by the debtor after the passage of a subsequent law, does not change or affect the principle : it is the homestead right, and not a homestead in any particular tract of land, which the law regards as a part of the contract, and which can not be enlarged by subsequent legislation.—Gunn v. Barry, 15 Wallace, 610 ; Grant v. Cosby, 51 Geo. 460 ; Page v. Page, 50 Geo. 597 ; Pryor v. Smith, 4 Bush, Ky. 379 ; Ladd v. Dudley, 45 N. H. 61 ; Laing v. Cunningham, 17 Iowa, 510 ; Bridgman v. Wilcut, 4 Greene, Iowa, 563.

3. The defendant claimed the whole tract of land as exempt, and not any particular specified part of it ; and thus there was no case made for the appointment of appraisers to

set apart the homestead. Moreover, the statute (Rev. Code, § 2881) does not apply to homesteads under the constitution ; and if it did apply, the sheriff's failure to comply with it was a mere irregularity, which did not invalidate the sale.

BRICKELL, C. J.—It is certainly true that, by the ancient common law, personal estate only could be subject to the payment of debts. The reason was : "That it was only a chattel that was lent, and therefore the chattels of the debtor were liable only to pay it ; and formerly men trusted one another no farther than they had visible chattels to answer the debt. The lands were not liable, because they were obliged to answer the duties to the feudal lord ; and a new tenant could not be forced upon him, without his consent to the alienation ; and the person was not liable, because that was obliged by the tenure to serve the king in the wars, and the several lords at home, according to the distinct natures of their tenure."—3 Bac. Abr. 663. The connection between the lord and the tenure—to secure the former the duties and services the fief bound the latter to render, and to prevent the transfer of these services and duties to another whom the lord had not accepted as a tenant, operated restraints on alienations by the act of the tenant, as well as by the acts of the law.—3 Black. Com. 419. This doctrine of the common law was never adapted to our condition, or to the nature of the tenure of real estate known to our laws, and was never a part of our jurisprudence. The common law of England is not, in all respects, the common law of this State. It was adopted, and prevails here, only so far as it is consistent with our institutions, and the public policy of the State, as deduced from our legislation.—*N. & C. Railroad Company v. Peacock*, 25 Ala. 229 ; *Barlow v. Lambert*, 28 Ala. 704 ; *Simpson v. State*, MSS.

The feudal restraints on the alienation of lands, and subjecting them to the payment of the debts of the owner, the growth of commerce compelled legislation in England to remove, long prior to the immigration of our ancestors to this continent. The statute of 13th Edw. 1, chap. 18, gave a judgment-creditor a writ of *elegit*, by which the sheriff was required to extend to him one half the debtor's lands, to be retained until the debt was satisfied.—3 Black. Com. 419. The principle is well settled, that English statutes, passed before the emigration of our ancestors, so far as consistent with our institutions and government, unless repealed, constitute a part of the common law prevailing in the States of a common origin.—*Carter v. Balfour*, 19 Ala. 814 ; *Horton v. Sledge*, 29 Ala. 478. If it were a matter of practical import-

ance, there would be no room for doubt, that this statute was of force during the five years of organized government elapsing before it was in substance re-enacted by the act of 1807, Clay's Dig. 199, § 1. This was followed by the act of 1812, which subjected lands, tenements, and heriditaments, to levy and sale under execution, for the satisfaction of all judgments or decrees in courts of record; and the clerks of such courts were directed to frame the execution accordingly. Clay's Dig. 205, § 17. It seems to us, therefore, the assertion of a mere truism, that it is, and has been, the law of this State, to subject lands, equally with personal estate, to the payment of debts; and it is certainly true that, in the absence of exemption by constitutional or statutory provisions, the law appropriates to the payment of debts any and every beneficial interest of a debtor in property, real or personal, or in its use, whether the interest is legal or equitable, held jointly or in severalty.—*Rugely & Harrison v. Robinson*, 10 Ala. 702. It is on the faith of this principle debts are now contracted, and not, as it is said they were in former times, on the faith of the visible chattels of the debtor. If parties are dealing fairly, the principle is in their contemplation, enters into, and forms part of the contract, as certainly as if it was expressed in terms; and it cannot be violated, without impairing the obligation of the contract. It is true, the legislature may change, alter, modify, or enlarge existing remedies; or it may abolish old, and substitute new remedies. Legislative power, in this respect, is subject to the restriction, that it cannot take away all remedy for the enforcement of existing contracts, nor substitute for former new remedies which impair the value and benefit of such contracts.— *Gunn v. Biddle*, 8 Wheat. 92; *Bronson v. Kinzie*, 1 How. 311; *McCracken v. Hayward*, 2 How. 608; *Van Hoffman v. Quincey*, 4 Wall. 552; *White v. Hart*, 13 Wall. 646; *Walker v. Whitehead*, 16 Wall. 314; *Ex parte Pollard*, 40 Ala. 77. We can not, therefore, assent to the argument, that the subjection of lands by legal process to the payment of debts is merely statutory—the consequence of statutory remedies —and that without imparing the obligation of contracts the legislature may wholly abrogate the remedy, or narrow it so that the property liable at the time the contract is made is withdrawn from its satisfaction. If the subjection of lands to the payment of debts was dependent wholly on statutory provisions, the statutes having rendered them liable, it would not be competent for the legislature, by a repeal of such statutes, to remove the liability, nor to lessen it, to the prejudice of creditors whose rights had attached. The concession of such power to the legislature involves practically

[Nelson v. McCrary et al.]

the power to nullify the contract, which the Federal constitution interdicts.

The question of chief importance in the present case is, whether the appellant's homestead exemption is to be measured and determined by the law in force when the debts on which the judgments rendered against him, for the satisfaction of which the lands were sold under execution, were contracted, or under the subsequent statute of April 23, 1873 (Pamph. Acts of 1872-3, p. 64), which was of force when the lands were acquired by the appellant, when the judgments were rendered, and at the sale by the sheriff. In the consideration of this question, the fact that the land was acquired subsequent to the making of the contracts, and after the enactment of the latter statute, is not material. The obligation of a contract is not limited to property which the man may own when he enters into it; nor is there any intendment, or implication, that he shall be discharged when such property is exhausted. In *Sturges v. Crowninshield*, 4 Wheat. 198, it is said by Ch. J. MARSHALL: "It is not true that the parties have in view only the property in possession when the contract is formed, or that its obligation does not extend to future acquisitions. Industry, talents, and integrity, constitute a fund, which is as confidently trusted as property itself. Future acquisitions are, therefore, liable for contracts; and to release them from this liability impairs their obligation." It is only through the agency of insolvent or bankrupt laws, that future acquisitions of a debtor may be relieved from liability for precedent debts.

This fact alone distinguishes this case from numerous cases recently decided in this court, which declare that a debtor's right of exemption is dependent on the law existing when the contract is made, and that without impairing its obligation subsequent legislation can not enlarge the exemptions of his property.—*Miller v. Marx*, at the last term; *Wilson v. Brown*, MSS. These decisions but follow the decisions of the Supreme Court of the United States, to which obedience is due from all State tribunals, on this and kindred questions.— *Gunn v. Barry*, 15 Wall. 610; *Edwards v. Kearzy* (6 Cent. Law Journal, No. 20); *Van Hoffman v. Quincey*, 4 Wall. 552; *White v. Hart*, 13 Wall. 646; *Walker v. Whitehead*, 16 Wall. 314. Before these decisions, the question may have been involved in doubt and uncertainty, by the conflicting decisions of the courts of the several States. It must now be accepted as the law, that the creditor may with confidence repose on the law as it is when he contracts, and learn from it the property which the debtor can claim as exempt, and the property he may through legal remedies condemn to

its satisfaction—that while the legislature may modify, it can not deprive him of all remedy, nor, in the regulation of remedies, invade the obligation of the contract as it was made.

When these contracts were made, the constitution of 1868 was of force, and limited the homestead to eighty acres of land, and the dwelling-house and appurtenances thereon. The exemption laws existing prior to that constitution were, as to debts contracted subsequent to its adoption, superseded by it. They operated only in reference to debts contracted prior to the constitution, not on subsequent debts.—*Miller v. Marx, supra.* If they applied to subsequent debts, they would not avail the appellant, for they were repealed by the act of April 23, 1873, long prior to his claim of exemption, and the levy and sale by the sheriff. Exemptions are statutory, or constitutional, and the law conferring them must be of force when they are claimed. A law giving them, which has been repealed, is not, and can not be, revived by a claim under it, though it may have been of force when the contract was made. The act of April 23, 1873, enlarged the homestead exemption to one hundred and sixty acres, including the dwelling and appurtenances. It can not, without a violation of the constitution of the United States, operate on debts contracted prior to its passage.

When the sale was made by the sheriff, there was no mode provided for ascertaining and setting apart the homestead of a judgment debtor. The statute (R. C. § 2881) applied only to the assignment of the homestead exempt under the statutes of which it was a part. It was directory in its terms, and a failure to observe them would have been mere irregularity—ground for an application to vacate the sale, but not the subject of inquiry in an action by a purchaser at a sale by the sheriff for the recovery of the lands. The purchaser could, in such action, recover only the lands which were not exempt, if, prior to the sale, the debtor had selected and claimed the homestead. In the rulings of the Circuit Court, we find no error prejudicial to the appellant.

The appellees have introduced into the bill of exceptions, taken by appellant, various exceptions reserved by them on the trial, to the rulings of the court which diminished the recovery they claimed, and, without prosecuting an appeal, have assigned errors on these rulings. There is no rule of practice which authorizes such an assignment.—*Leslie v. Langham,* 40 Ala. 524; *Wright v. Evans,* 53 Ala. 103. We have not considered, and express no opinion in reference to these rulings of the Circuit Court.

The judgment is affirmed.