## Peevey *v.* Cabaniss.

*Equitable Attachment by Surety against Principal Debtor; Intervention by Creditor.*

1. *Homestead exemption; by what law determined; extent and value in 1860.*—The right to a homestead exemption, and its quantity and extent, as against creditors, are to be determined by the law which was of force when their debts were created; and where the debt was created in 1860, the value of the homestead then allowed being $500, a homestead can not be claimed under the law of 1867, which allowed $1,700.

2. *Same; allotment by commissioners; notice to creditor.*—An allotment of a homestead by commissioners under the act of 1867 (Rev. Code, § 2884), allowing a retroactive operation to the law as against an execution creditor whose debt was contracted in 1860, is not binding on the creditor, when no notice of the proceeding was given to him, and he is not estopped from afterwards assailing its validity.

3. *Voluntary conveyance.*—When the husband buys lands, taking the title in the name of his wife, but paying the purchase-money with his own funds, the conveyance is fraudulent and void as against his existing creditors.

4. *Equitable attachment by surety, against principal and his fraudulent grantee; intervention by creditor.*—When an equitable attachment is sued out by a surety, seeking to reach and subject lands alleged to have been fraudulently conveyed by the principal debtor (Code, § 3864), the creditor may intervene, if the surety has not paid the debt (Sess. Acts 1880–81, p. 33); and he may prosecute the suit to a decree in his own favor, on the death of the surety, and the refusal or neglect of his personal representative to revive and prosecute it.

5. *Same; constitutionality of law authorizing intervention by creditor.* The said statute, authorizing the creditor to intervene and prosecute the suit, is a valid exercise of legislative power, relating exclusively to the remedy; and the provision which makes it applicable to *pending suits*, "in which the complainant *has* died, not having paid the debt, and his personal representative *has* neglected or refused to revive the same," is not violative of any constitutional principle.

6. *Purchase pendente lite.*—A purchaser of land *pendente lite*, after an attachment has been levied on it, takes it *cum onere*, and subject to the contingency of loss by the result of the suit.

[Peevey v. Cabaniss.]

APPEAL from the Chancery Court of Madison.

Heard before the Hon. N. S. GRAHAM.

The original bill in this case was filed on the 31st July, 1871, by Andrew J. Wood, against Robert W. Peevey and his wife, Lou B. Peevey; and prayed an equitable attachment against a tract of land particularly described, the legal title to which was in Mrs. Peevey's name, and that the land might be subjected to the payment of a debt, for which complainant was bound as the surety of said Robert W. Peevey. The debt was due to S. D. Cabaniss, as the executor of the last will and testament of Samuel Townsend; was evidenced by a bond, or promissory note for $730, dated the 4th December, 1860, payable twelve months after date, with interest, and signed by said R. W. Peevey, who was the principal, and by said Andrew J. Wood, with J. C. Bradley and L. M. Peevey, as his sureties; and was reduced to judgment in the Circuit Court of said county, on the 11th May, 1871, in favor of said executor, against said R. W. Peevey, Wood, and Bradley. An execution was issued on this judgment, which was levied by the sheriff, on the 1st July, 1871, on the tract of land now sought to be reached by the attachment in this case; and a claim of exemption being thereupon made by said R. W. Peevey, the land was set apart to him, as his homestead exemption, by commissioners appointed by the sheriff. The bill alleged that no part of the judgment had been paid, and that another execution was in the sheriff's hands, to be levied on the property of the complainant. The tract of land contained about 250 acres, and was conveyed to Mrs. Lou B. Peevey by Martha A. Carter, by deed dated the 2d November, 1866, which recited, as its consideration, the payment in cash of $1,500. A copy of this deed was made an exhibit to the bill; and it was alleged in reference to it, in the 8th paragraph of the bill, that the purchase-money paid to Mrs. Carter "was in fact the money of said Robert W. Peevey; that said deed was so made to said Lou B. Peevey at the instance and request of said Robert W. Peevey, and with the connivance and assent of the said Lou B. Peevey, as a fraudulent disposition of his property, and for the purpose of avoiding the payment of his debts." The bill prayed, on these facts and allegations, that an equitable attachment be issued, and levied on the land; that the deed to Mrs. Peevey be set aside, and held for naught; that, on the payment of the judgment to Cabaniss by the complainant, the lands be sold under the decree of the court, and the proceeds be paid to him to the extent of the payment made by him; and for other and further relief, under the general prayer.

The bill was verified by the oath of the complainant, who also made affidavit, before the register, that the attachment was

[Peevey v. Cabaniss.]

not sued out for the purpose of vexing or harassing said Robert W. Peevey; and an order was thereupon made by the register, "that the writ of attachment be issued according to the prayer of the bill, on the complainant entering into bond, in the sum of $1,500, payable and conditioned as the law directs." The bond was given, as required; and an attachment was thereupon issued, and levied on the land on the 2d August, 1871. The defendants filed a joint and separate answer, in which they admitted all the allegations of the bill, except those contained in the 8th paragraph; and as to it they thus answered: "These respondents deny that the facts stated in the 8th paragraph of said bill are true, and demand strict proof thereof; and they aver and claim that the land attached by the complainant in this cause is, by virtue of the laws of Alabama, exempt from levy and sale under any legal process, as it is all the real estate owned by them, and is not worth in value exceeding $1,500; and they claim that said real estate is so exempt, and ask that said attachment may be dissolved, and said levy set aside. And for further answer to said bill they say, that said real estate was levied on by the sheriff of said county, on the 1st July, 1871, to satisfy the judgment in said bill mentioned; and upon application to said sheriff, by said Robert W. Peevey, the said land was set apart to said Robert, by three disinterested freeholders, appointed by said sheriff for that purpose, under and by virtue of the laws of Alabama. And said Robert W. Peevey submits, that said note was executed for slaves purchased by him from said Cabaniss prior to 1861, and that said Cabaniss did not institute said suit until after the 27th January, 1866; and even if it is true he advanced the money to buy said land, he insists he acted in good faith, as it was generally thought parties could not recover on such debts, and he felt morally bound to provide a home for those who were dear to him by ties of association and affection, and who had the right, legal and moral, to require of him protection and support."

The cause was continued from term to term, with occasional orders granting leave to take additional testimony, from June, 1872, until July, 1878, when the death of the complainant was suggested. At the January term, 1879, the cause was revived in the name of John T. Wood, as administrator of said A. J. Wood; and at the succeeding July term, 1879, his death was suggested, and the cause was revived in the name of Thomas J. Humphrey, as administrator *de bonis non;* but this order was set aside on a subsequent day of the term, "on motion of the complainant," and the cause was again continued for several terms. On the 25th May, 1881, a petition was filed by Cabaniss, as the executor of Samuel Townsend, stating the various proceedings had in the cause, as above set out; alleging that his

judgment was still unpaid, and that said Thomas J. Humphrey, the administrator *de bonis non* of the original complainant, refused to revive and prosecute the suit; and praying that he be allowed to intervene as complainant, under the act approved March 1st, 1881 (Sess. Acts 1880–81, p. 33), and have the relief prayed in the original bill.

At the ensuing July term, 1881, an amended answer was filed by Peevey and wife, alleging that, at the time the bill was filed and the attachment levied, they were resident citizens of Alabama, and said Robert W. was the head of a family; "that they owned and occupied said lands as a homestead, continuously, from the time they were conveyed to said Lou B., until the 23d February, 1872, when they sold and conveyed the same to Francis T. Butler, for the sum of $1,900, and placed him in immediate possession thereof; that said sale was *bona fide*, and said Butler fully paid the purchase-money, and has continued in possession of said land ever since." At the same term, they filed a demurrer to the petition of Cabaniss, assigning several grounds of demurrer; which were, in substance, that the petition made a new and different case from that set out in the original bill, and that it was not authorized by law. The chancellor overruled the demurrer, and held that the petition was properly filed.

The original complainant had taken the depositions of several witnesses, for the purpose of proving that the purchase-money for the land was paid by Robert W. Peevey with his own funds. Two of these witnesses testified to the fact, that said Peevey procured a loan of money (or cotton) with the avowed purpose of paying for the land; and another, to his declarations, made soon after the purchase, that he had paid for the land, and had taken the title in his wife's name to avoid the payment of the debt to the Townsend estate. No testimony on this point was taken by the defendants, but objections were filed by Mrs. Peevey to the admissibility of her husband's declarations, subsequent to the execution of the deed, not made in her presence. The testimony taken by the defendants was intended to establish that the land was their homestead, on which they resided continuously from the date of the deed to January, 1872, and that it was allotted to them, as their homestead exemption, by commissioners appointed by the sheriff in July, 1871. The original execution on the judgment in favor of Cabaniss, which was levied on the land, was proved to have been lost, as also the allotment and return of the commissioners; but the sheriff, who made the levy, testified from memoranda on his docket, as well as from memory, that a homestead exemption in the lands was claimed by R. W. Peevey, that he thereupon appointed three commissioners to make the allot-

[Peevey v. Cabaniss.]

ment, and that he returned their report, with the execution, to the Circuit Court; and another witness thus testified in reference .to the allotment: "Some time in the year 1871, R. W. Peevey made application to me, as a justice of the peace, to qualify W. P. Terry, John P. Smith, and R. W. Moody, as commissioners to set apart to him his exemptions under the laws of Alabama. I qualified them, and wrote their report; and they set apart to said Peevey and wife, as exempt, the place above described," being the land in controversy. "Said commissioners signed their report, and I certified their signatures." This was all the evidence in reference to the allotment of the lands as a homestead.

On final hearing, on pleadings and proof, the chancellor held that the intervening petitioner was entitled to relief; and he rendered a decree, setting aside the deed to Mrs. Peevey as fraudulent, declaring a lien on the lands for the amount due on the petitioner's judgment, and further declaring that the allotment of the homestead was inoperative as against said judgment. The defendants appeal from this decree, and here assign each part of it as error, together with the overruling of their demurrer to the petition.

BRANDON & JONES, for appellants.—1. The affidavit and bond, required in attachment cases, are intended for the protection of the defendant, whose property is to be taken from him under this coercive process, and in this arbitrary manner; and yet, under the recent statute invoked in this case, a judgment-creditor is allowed to intervene, without bond or affidavit, and to harass and annoy the defendant, without any of the restrictions imposed by law in other attachment cases; and that, too, after the suit had abated by the death of the complainant, and the failure of his personal representative to revive it. The statute is in its terms retroactive, applying to pending suits, or those which have already abated; and in this case it was thus applied. It is the duty of the legislature to declare the law which shall govern future cases; and it is the function of the courts to deal with past facts, and to proceed upon the law as it stands. It is submitted that the law, in its application to this case, is inoperative and void.—Sedg. Const. & Stat. Law, 2d ed. by Pomeroy, 138, note *a*; *Ib* 160, 161, 167; *United States v. Klein*, 13 Wall. 128; *Carleton v. Goodwin*, 41 Ala. 153; *People v. Supervisors*, 16 N. Y. 424; *Reiser v. Saving Fund Asso.*, 39 Penn. 137; *Trask v. Green*, 9 Mich. 358–66; *Simonds v. Simonds*, 103 Mass. 572; *Bradford v. Brooks*, 2 Ark. 284; 5 Pick. 65; *Hill v. Sunderland*, 3 Vermont, 507; *Weaver v. Lapsley*, 43 Ala. 224; *Saunders v. Cabaniss*, 43 Ala. 173; *Burt v. Williams*, 24 Ark. 91. As against Butler, who bought in

[Peevey v. Cabaniss.]

good faith, paid full value, and has been in possession for nine years, the effect of the decree is to allow a stranger to the record to come in and deprive him of the fruits of his purchase. *Sherwood v. Fleming,* 25 Texas, 408; *Wright v. Hawkins,* 28 Texas, 452.

2. As to the claim of homestead exemption, and the validity of the allotment made by the commissioners, the case of *Jones v. DeGraffenreid,* 60 Ala. 145, is conclusive.

L. P. WALKER, *contra.*—1. As against the judgment of Cabaniss, which was contracted in 1860, Peevey could not claim a homestead exemption of greater value than $500, while the admitted value of the homestead allotted to him was from $1,500 to $1,900; and for this reason it was void, even if it had been proved that the allotment was regularly made.—*Blum v. Carter,* 63 Ala. 235; *Furley, Spear & Co. v. Whitehead,* 63 Ala. 303; *Preiss v. Campbell,* 59 Ala. 637; *Lovelace v. Webb,* 62 Ala. 285. If the allotment of the homestead was regular and valid, the right has been lost and forfeited, leaving the property subject to the lien of the attachment; the proof showing that Peevey and wife continued in possession *until January, 1872,* while the sale to Butler was on the 23d *February, 1872.*—*Blum v. Carter,* 63 Ala. 237; *Allen v. Cook,* 2 Barb. 379; *Norris v. Kidd,* 28 Ark. 492; Thompson on Homesteads, § 397.

2. The statute which authorized Cabaniss to intervene and prosecute the suit, merely regulates the remedy, and is a valid exercise of legislative power. The terms of the statute were strictly complied with.

SOMERVILLE, J.—The case of *Smith's Executor v. Cockrell,* decided by this court at the last term (66 Ala. 64), is conclusive against the appellants, on the main questions raised by the assignments of error.

It had frequently been decided before that case, and the principle was there re-affirmed, and may now be considered as settled law, that the right of homestead exemption, as against creditors, is to be determined by the statutes which were in existence when the debt in the given case was created or contracted.—*Fearn v. Ward, adm'r,* 65 Ala. 33; *Nelson v. McCreary,* 60 Ala. 301.

It was further decided, as we think on the soundest principles, that an allotment of a homestead made by commissioners, appointed under the provisions of section 2881 of the Revised Code of 1867, and charged with the duty of valuing and setting it apart by metes and bounds, could not be made so as to impart *retroactive operation* to any exemption law existing at the time of the allotment, but not in existence when the debt in

question was contracted. Accordingly, under the application of this principle, as against a debt created in 1865, an allotment a homestead under the provisions of the act of 1867, embodied partly in section 2884 of the Revised Code, was declared by this court to be inoperative and void.—*Smith's Executor v. Cockrell, supra.*

In the same case it was held that, where such allotment of a homestead had been thus attempted to be made by commissioners (Rev. Code, § 2881) so as to give retroactive operation to an existing exemption law, and no *notice* of the proceeding was at the time given to the plaintiff in execution, the allotment was not binding on him, and he was not estopped from afterwards assailing its validity.

The debt here in controversy was contracted in the year 1860. The exemption law then in force included a homestead, to be selected by the head of the family, not exceeding three hundred and twenty acres of real estate, and *in value* not to exceed the sum of *five hundred dollars.*—Rev. Code, § 2880. The exemption allotted by the commissioners was made under the act of 1867 (Rev. Code, § 2884), and the value of the homestead set apart was worth not less than fifteen hundred dollars, and very probably more than that sum. Nor is there any evidence in the record showing that the plaintiff in execution, Cabaniss, had any notice of the intended allotment as sought to be made by the commissioners. These considerations prove fatal to the validity of the whole proceeding, and render it entirely inoperative. The claim of exemption, therefore, based on this proceeding, or attempted allotment, and set up by the defendants in their answer to complainant's bill, must fall to the ground as worthless and unavailing.

The conveyance made to Mrs. Peevey was clearly voluntary, and, therefore, fraudulent and void as to the existing creditors of her husband, Robert Peevey, who paid the purchase-money to the grantor from his own funds, a portion of which he borrowed for this specific purpose. There is no conflict on this point, so far as concerns the facts disclosed by the evidence; and the donation is inferentially admitted, and sought to be justified by defendants in their answer, by the interposition of the claim of exemption.

There was no error in permitting the appellee, Cabaniss, to intervene as complainant in the Chancery Court in this suit, as the executor of Samuel Townsend, deceased. The proceeding was an equitable attachment by a surety, against Robert Peevey, the appellant, as principal debtor, commenced under the provisions of section 3864 of the Code. The act of the General Assembly, approved March 1st, 1881, amendatory of section 3866 of the Code, fully authorized the action of the court mak_

[Daniel v. Coker.]

ing Cabaniss a party; the original complainant in the suit, Wood, having died, and not having paid the debt in controversy, for which he was liable as Peevey's surety; and Wood's personal representative having refused to revive the suit, by intervening and further prosecuting it. The record shows affirmatively the existence of these conditions as required by the amendatory act.—Acts 1880–81, p. 33.

The objections to the constitutionality of this act are, in our opinion, without force. No clause of the constitution is pointed out, to which it is at all repugnant. It is an act of legislation having reference exclusively to the remedy, and is a mere regulation of civil procedure in the Chancery Court, authorizing the real party in interest to intervene in a suit which was authorized by law for his benefit. This was the exercise of a purely legislative, and not of judicial power, and was clearly within the constitutional power of the General Assembly as the supreme law-making power of the State.—*Davis v. The State*, 68 Ala. 58; *Dorman v. The State*, 34 Ala. 216; Cooley's Const. Lim. 380–383.

The purchase by Butler of the land in controversy was made after the levy of complainant's attachment, and *pendente lite*. Complainant's rights were, therefore, in no wise affected by the sale made to him by Peevey and wife. A vendee, in such cases, takes his title *cum onere*, and subject to the contingency of loss by the hazards of the pending litigation.—Freeman on Judgments, §§ 191–194.

We find no error in the decree, or other rulings of the chancellor, which can affect the merits of this cause; and his decree is accordingly affirmed.

BRICKELL, C. J., not sitting.