SMITH et al. v. GOOD.

(Circuit Court, D. Rhode Island. March 3, 1888.)

CONSTITUTIONAL LAW—AMENDMENT TO STATE CONSTITUTION—RIGHT TO QUESTION IN FEDERAL COURTS.

Act R. I. March 10, 1886, (Pub. Laws, c. 550,) provides that the question of the adoption of article 5 of amendments to the constitution, prohibiting the manufacture and sale of intoxicating liquors to be used as a beverage, shall be submitted to the people, the ballots counted by the governor, secretary of state, and attorney general, and the result authoritatively announced by the governor by proclamation. Held, in an action on a promissory note, given for the purchase price of such liquors, by the indorsee, who took it with full knowledge of the consideration, that the circuit court of the United States sitting in Rhode Island had no power to inquire into the question of the legal

adoption of the amendment, the political power of the state having declared that the amendment had been legally adopted, the amendment having been acquiesced in by the people, and it never having been adjudged illegal by the courts of the state, and that judgment should be entered for the maker of the note.

At Law.

*Chas. E. Gorman,* for plaintiffs.

*Wilson & Senckes,* for defendant.

COLT, J. This case was heard by the court, jury trial having been waived. It is an action upon a promissory note given for the purchase of intoxicating liquors. It is admitted that the plaintiffs cannot recover if article 5 of amendments to the constitution of Rhode Island, which prohibits the manufacture and sale of intoxicating liquors to be used as a beverage, has been legally adopted.

By the agreed statement of facts it appears that Hanley, Hoye & Co. were liquor dealers in the city of Providence, on June 12, 1886; that they were duly licensed to sell liquors at wholesale and retail under the law for one year from July 1, 1885, and that they sold to the defendant, at Providence, on June 12, 1886, certain intoxicating liquors to be used as a beverage, for the sum of $696.50, and in payment thereof took the note declared on in this action. The note was afterwards, for value received, indorsed and delivered to the plaintiffs, with full knowledge and notice that it was given for the purchase of intoxicating liquors to be used as a beverage. It is further admitted that the governor of Rhode Island issued the proclamation of May 14, 1886, declaring article 5 to be a part of the constitution of the state. It is also agreed that there were no town meetings in certain towns in the state on the first Wednesday of April, 1886, and no ward meetings held in the Ninth and Tenth wards of the city of Providence on that date; and that the ballots cast for the amendment in the towns of Lincoln, Cumberland, Warwick, and East Providence, and in the Ninth and Tenth wards of the city of Providence, were given in district meetings, and not in town or ward meetings. The contention of the plaintiffs is that the amendment was not legally adopted because—*First,* under article 13 of the constitution of Rhode Island a ballot on a proposed amendment can only be given in town or ward meetings; *second,* in the several acts creating districts no jurisdiction is conferred upon district meetings to receive ballots upon a constitutional amendment; *third,* the act of submission of March 10, 1886, does not submit the proposition of amendment to be voted upon in district meetings, but to "meetings of electors,"—meaning necessarily those established in the constitution; *fourth,* even if the act can be construed as intending to submit the amendment to district meetings, it was beyond the power of the legislature to submit it to be voted upon at other meetings than those designated in article 13 of the constitution.

The first question which meets us at the beginning of this case is whether the court has any jurisdiction to determine the issue which is here raised. When the political power of a state declares that an amend-

ment to the constitution has been duly adopted, and the amendment is acquiesced in by the people, and has never been adjudged illegal by the state court, the jurisdiction of a federal court to question the validity of such a change in the fundamental law of a state should clearly appear. I am referred to no case in which any federal court has assumed to exercise such a power. There are decisions of state courts where the supreme court of the state has passed upon the regularity of the adoption of amendments to their constitution where the instrument prescribed the mode of amendment. The question is reviewed at great length in the recent case of *Koehler* v. *Hill*, 60 Iowa, 543, 14 N. W. Rep. 738, 15 N. W. Rep. 609, and the majority of the court there held that a case involving the regularity of the adoption of an amendment to the constitution, not in any manner pertaining to the judicial authority, is subject to the jurisdiction of the state court; but in view of the powerful dissenting opinion of Judge BECK in that case it can hardly be said that such a rule of decision is fully established in the state tribunals. But however this may be, I cannot but consider the position of the federal courts as different. I am not satisfied that any such judicial power is conferred under the federal constitution upon the courts of the United States. It seems to me contrary to the plan of the federal government for its judiciary to thus interfere with what is recognized and accepted as part of the constitution of a state. The very framework of the federal government presupposes that the states are to be the judges of their own laws; and it is not for the federal courts to interpose, unless some provision of the federal constitution has been violated. It is not pretended in this case that any federal question is raised. The federal courts derive their powers from section 2 of article 3 of the constitution of the United States, and I find no such power there enumerated as is here sought to be invoked. The constitution itself provides when the United States may interfere in the government of the states. Section 4 of article 4 declares that the United States shall guaranty to every state in the Union a republican form of government, and shall protect each of them against invasion; and, on application of the legislature or of the executive, (when the legislature cannot be convened,) against domestic violence. When the United States will interfere with the government of a state under this provision, rests with congress or the executive rather than with the courts.

The assumption of such a power by the federal courts as is now contended for would lead to much confusion, and place the fundamental laws of the states on very unstable foundations. The adoption of an amendment may turn upon a question of fact as well as law, and, if it be a question of fact, where is the limit or end of the controversy that may be provoked? Suppose one party denies that the requisite number of qualified electors voted for the amendment. Might not the court be forced into the inquiry as a question of fact of the legal qualification of every voter in the state who voted for the amendment? Where the political power of the state has declared that the fundamental law has been changed, and the legislature have passed statutes in obedience

thereto, and the people have accepted such change, it cannot be that the state of Rhode Island must wait until the end of protracted proceedings in a federal court to discover what its fundamental law is, in a case where it is not pretended that any question arising under the federal constitution is involved. Further, questions of fact are tried by jury, and a decision only binds the parties to the case; one jury in one case might decide that the amendment was valid, and another jury in another case, upon a different presentation of the facts, might reach the conclusion that the amendment was invalid. Surely a court should hesitate before assuming a jurisdiction which might lead to such results. And this is another reason why the clearest authority should be shown before a federal court should assume to pass upon, and perhaps declare illegal, the solemn act of a state by which its fundamental law is changed. But the federal courts have refused to interfere in these cases. I know that the plaintiffs rely on the distinction between the adoption of a new constitution and an amendment to an existing constitution. It is admitted that the first act is political in its nature, and therefore outside of the judicial power. But upon reason it is difficult to see any wide distinction between the two. Both are acts of the same sovereign character on the part of the people, and both concern changes in the organic law of the state. The federal courts have never recognized this distinction. Indeed, the reasons which are urged against the power of a state court to adjudicate upon the validity of a new constitution do not apply to the federal courts, and therefore, if a federal court can take jurisdiction in the one case, it may in the other. It is said that a state court is forbidden from entering upon such an inquiry when applied to a new constitution, and not to an amendment, because the judicial power presupposes an established government, and if the authority of that government is annulled and overthrown, the power of its courts is annulled with it; and therefore, if a state court should enter upon such an inquiry, and come to the conclusion that the government under which it acted had been displaced by an opposing government, it would cease to be a court, and it would be incapable of pronouncing a judicial decision upon the question before it; but, if it decides at all, it must necessarily affirm the existence of the government under which it exercises its judicial powers. But it is manifest that these objections to a state court entering upon such an inquiry are inapplicable to a federal court, which is independent of the state government. The reasoning of the supreme court of the United States in *Luther* v. *Borden,* 7 How. 1, where the court was asked to decide between two contesting governments in Rhode Island,—the old charter government and the Dorr government,—is as pertinent, it seems to me, to the case of an amendment as to rival constitutions. Indeed, by the language of the court itself, no distinction is made between a constitution and an amendment. Mr. Chief Justice TANEY, speaking for the court, says:

"In forming the constitutions of the different states, after the Declaration of Independence, and in the various changes and alterations which have since been made, the political department has always determined whether the pro-

posed constitution or amendment was ratified or not by the people of the state, and the judicial power has followed its decision."

On the point of the authority in the constitution for the federal courts to entertain jurisdiction in this class of cases, Mr. Justice WOODBURY, who agreed with the opinion of the court on this branch of the case, says: "Again, the constitution of the United States enumerates specially the cases over which its judiciary is to have cognizance, but nowhere includes controversies between the people of a state as to the formation or change of their constitutions." The case of *Luther* v. *Borden* is still the law of the federal courts, and it has been followed by the supreme court wherever similar questions have arisen. *White* v. *Hart*, 13 Wall. 646; *Georgia* v. *Stanton*, 6 Wall. 50.

In this case the law of the state has provided (act March 10, 1886, c. 550, Pub. Laws) that the question of the adoption of this amendment should be submitted to the people, that the ballots should be counted by the governor, secretary of state, and attorney general, and the result authoritatively announced by the governor by proclamation. So far as the federal courts are concerned, I think that the determination made by the state officers, acting under and in pursuance of this provision, is to be taken as the voice of the people of Rhode Island on the question whether the amendment has or has not been adopted. Further questions might arise if the supreme court of the state should at any time decide to the contrary, but with these questions we have nothing to do in the present case. It is sufficient now to say that since the result of the vote on this amendment has been ascertained by the authority appointed for that purpose by the law of the state, and no other authority or department of the state government has spoken to the contrary, it seems clear to me that the federal government is to take the result as announced by the governor as a final statement of the fact in the case. I am of opinion, both upon reason and authority, that this court has no lawful power to inquire into the validity of article 5 of amendments to the constitution of Rhode Island, and therefore judgment must be entered for the defendant. Judgment for defendant.