Mr. Justice SWAYNE
 

 stated the case, and delivered the opinion of the court.
 

 The suit was instituted by the plaintiff in error on the 10th of January, 1866, in the Superior Court of Chattooga County. He declared upon a promissory note made to him by the defendants in error for twelve hundred and thirty dollars, dated February 9th, 1859, and payable on the 1st of March, A.D. 1860. The defendant pleaded in abatement that “ the consideration of the note was a slave,” and that “by the present Constitution of Georgia, made and adopted since the last pleadings in this ease, the court is prohibited to take and exercise jurisdiction or render judgment therein.” To this plea the plaintiff demurred. The court overruled the demurrer and gave judgment for the defendants. The plaintiff excepted and removed the case to the Supreme Court of the State, where the judgment was affirmed, and the plaintiff thereupon prosecuted this writ of error. The
 
 *648
 
 Constitution of Georgia of 1868, which is still in force, contains
 
 *
 
 the following clause:
 

 “Provided, that no court or officer shall have, nor shall the General Assembly give, jurisdiction to try, or give judgment on, or enforco any debt the consideration of which was a slave or the hire thereof.”
 

 From the close of the rebellion until Georgia was restored to her normal relations and functions in the Union, she was governed under the laws of the United States known as the Reconstruction Acts. Under these laws her present constitution was framed, adopted, and submitted to Congress. Among the terms of her rehabilitation prescribed by the acts referred to it was made a fundamental condition that certain designated parts of the constitution so submitted should “ be null and void, and that the General Assembly of the State” should, “by a solemn act, declare the assent of the State” to the required modification.
 
 †
 
 The constitution. was modified accordingly. When submitted it contained the proviso here under consideration. No objection was made to the proviso, and it has since remained a part of the instrument. With her constitution thus modified, Congress enacted “ that the State of Georgia, having complied with the Reconstruction Acts, and the fourteenth and fifteenth amendments to the Constitution of the United States having been ratified in good faith by a legal legislature of said State, it is hereby declared that the State of Georgia is entitled to representation in the Congress of the United States.”
 
 ‡
 
 Her representatives and senators were thereupon admitted to seats in Congress. This act removed the lust of the disabilities and penalties which were visited upon her for her share of the guilt of the rebellion. The con-donation by the National government thus became complete.
 

 The judgment we are called upon to review is sought to be maintained upon the following grounds:
 

 
 *649
 
 (1.) That when the constitution of 1868 was adopted Georgia was not a State of the Uuion; that she had sundered her connection as such, and was a conquered territory wholly at the mercy of the conqueror; and that hence the inhibition of the States by the Constitution of the United States to pass any law impairing the obligation of contracts had no application to her.
 

 (2.) That her constitution does not affect the contract, but only denies jurisdiction to her courts to enforce it.
 

 (3.) That her constitution was adopted under the dictation and coercion of Congress, and is the act of Congress, rather than of the State: and that, though a State cannot pass a law impairing the validity of contracts, Congress can, and that, for this reason also, the inhibition in the Constitution of the United States has no effect in this case.
 

 The third of these propositions is clearly unsound, and requires only a few remarks. Congress authorized the State to frame a new constitution, and she elected to proceed within the scope of the authority conferred. The result was submitted to Congress as a voluntary and valid offering, and was so received and so recognized in the subsequent action of that body. The State is estopped to assail it upon such an assumption. Upon the same grounds she might deny the validity of her ratification of the constitutional amendments. The action of Congress upon the subject cannot be inquired into. The case is clearly one in which the judicial is bound to follow the action of the political department of the government, and is concluded by it-.
 
 *
 
 We may add, that if Congress had expressly dictated and expressly approved the proviso in question, such dictation and approval would be without effect. Congress has no power to supersede the National Constitution.
 

 The subject presented by the first proposition has been considered under some of its aspects several times by this
 
 *650
 
 court. We need do little more upon this occasion than to reaffirm the views heretofore expressed, and add such further remarks as are called for by the exigencies of the case before us.
 

 The National Constitution was, as its preamble recites, ordained and established by the people of the United States. It created not a confederacy of States, but a government of individuals. It assumed that the government and the Union which it created, and the States which were incorporated into the Union, would be indestructible and perpetual; and as far as human means could accomplish such a work, it intended to make them so. The government of the Nation and the government of the States are each alike absolute and independent of each other in their respective spheres of action; but the former is as much a part of the government of the people of each State, and as much entitled to their allegiance and obedience as their own local State governments—“ the Constitution of the United States and the laws made in pursuance thereof,” being in all cases where they apply, the supreme law of the land. For all the purposes of the National government, the people of the United States are an integral, and not a composite mass, and their unity and identity, in this view of the subject, are not affected by their segregation by State lines for the purposes of State government and local administration. Considered in this connection, the States are organisms for the performance of their appropriate functions in the vital system of the larger polity, of which, in this aspect of the subject, they form a part, and which would perish if they were all stricken from existence or ceased to perform their allotted work. The doctrine of secession is a doctrine of treason, and practical secession is practical treasou, seeking to give itself triumph by revolutionary violence. The late rebellion was without any element of right or sanction of law. The duration and magnitude of the war did not change its character. In some respects it was not unlike the insurrection of a county or other municipal subdivision of territory against the State to which it belongs. In such eases the State has inherently
 
 *651
 
 the right to use all the means necessary to put down the resistance to its authority, and restore peace, order, and obedience to law. If need be, it has the right also to call on the government of the Union for the requisite aid to that end. Whatever precautionary or penal measures the State may take when the insurrection is suppressed, the proposition would be a strange one to maintain, that while it lasted the county was not a part of the State, and hence was absolved from the duties, liabilities, and restrictions which would have been incumbent upon it if it had remained in its normal condition and relations. The power exercised in putting down the late rebellion is given expressly by the Constitution to Congress. That body made the laws and the President executed .them. The granted power carried with it not only the right to use the requisite means, but it reached further and carried with it also authority to guard against the renewal of the conflict, and to remedy the evils arising from it in so far as that could be effected by appropriate legislation.
 
 *
 
 At no time were the rebellious States out of the pale of the Union. Their rights under the Constitution were suspended, but not destroyed. Their constitutional duties and obligations were unaffected and remained the same. A citizen is still a citizen, though guilty of crime and visited with punishment. His political rights may be put in abeyance or forfeited. The result depends upon the rule, as defined in the -law, of the sovereign against whom he has offended. If he lose his rights he escapes none of his disabilities and liabilities which before subsisted. Certainly he can have no new rights or immunities arising from his crime. These analogies of the county and the citizen are not inapplicable, by way of illustration, to the condition of the rebel States during their rebellion. The legislation of Congress shows that these were the views entertained by that department of the government.
 

 In the several acts admitting new States the same formula substantially is used in all cases. It is, that the State named
 
 *652
 
 “ shall be and is hereby declared to be one of the United States of America, and is hereby admitted into the Union, upon an equal footing with the original States, in all respects whatsoever.”
 
 *
 
 In the several Reconstruction Acts, the language used in this connection is, that the State in question “ shall be declared entitled to representation in Congress, and senators and representatives shall be admitted therefrom.”
 
 †
 
 “ Shall be entitled and admitted to representation in Congress as a State of the Union, when,” &c.
 
 ‡
 
 And, lastly, in the final act as to Georgia—“ It is hereby declared that the State of Georgia is entitled to representation in the Congress of the United States.”
 
 §
 

 The different language employed in the two classes of cases evinces clearly that, in the judgment of Congress, the reconstructed States had not been out of the Union, and that to bring them back into full communion with the loyal States, nothing was necessary but to permit them to restore their representation in Congress. Without reference to this element of the case, we should have come to the same conclusion. But the fact is one of great weight in the consideration of the subject. And we think it is conclusive upon the judicial department of the government.
 
 ǁ
 

 Georgia, after her rebellion and before her representation was restored, had no more power to grant a title of nobility, to pass a bill of attainder, an
 
 ex post facto
 
 law, or law impairing the obligation of contracts, or to do anything else prohibited to her by the Constitution of the United States, than she had before her rebellion began, or after her restoration to her normal position in the Union. It is well settled by the adjudications of this court, that a State can no more impair the obligation of a contract by adopting a constitution than by passing a law. In the eye of the constitutional inhibition they are substantially the same thing.
 

 
 *653
 
 The second proposition remains to be considered. When the note was executed and until the constitution of 1868 was adopted, the courts of the State had unquestionable jurisdiction to entertain a suit brought to enforce its collection, and if that jurisdiction ceased it was by reason of the provision of the constitution of the State, here under consideration.
 

 The question presented by this proposition was fully considered by this court in
 
 Van Hoffman
 
 v.
 
 The City of
 
 Quincy.
 
 *
 
 The city had sold its bonds under acts of the legislature of Illinois, which authorized their issue and required the assessment and collection of a special tax to meet the interest; and it was declared that the amount so raised should be applied to that object “ and to no other purpose whatsoever.” The legislature subsequently passed an act which prohibited any tax beyond the amount therein specified to be imposed. This tax yielded a sum barely sufficient to meet the municipal wants of the city—leaving nothing to be applied to the interest upon the bonds. This court held the prohibition, so far as it affected the special tax, to be void, and by a writ of mandamus ordered that tax to be collected and applied, as if the subsequent' act had not been passed. It was said, “ the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. . . . Nothing can be more material to the obligation than the means of enforcement.” Without the remedy, the contract may indeed, in the sense of the law, be said not to exist, and its obligation to fall within the class of those moral and social duties, which depend for their fulfilment wholly upon the will of the individual. The ideas of validity and remedy are inseparable and both are parts of the obligation which is guaranteed by the Constitution against invasion. The obligation of a contract “is the law which binds the parties to perform their agreement.” It was said further, that the State may modify the remedy, but not so as to impair substantial rights; and
 
 *654
 
 that whenever this result “ is produced, the act is within the prohibition of the Constitution, and to that extent void.” When the contract here in question was entered into, ample remedies existed. All were taken away by the proviso in the new constitution. Not a vestige was left. Every means of enforcement was denied, and this denial if valid involved the annihilation of the contract. But it is not valid. The proviso which seeks to work this result, is, so far as all preexisting contracts are concerned, itself a nullity. It is to them as ineffectual as if it had no existence. Upon the questiou as thus presented, several eminent State courts have expressed the same views.
 
 *
 

 As the ease is disclosed in the record we entertain no doubt of the original validity of the note, nor of its validity when the decision before us was made. But as that question was not raised in this case, we deem it unnecessary to remark further upon the subject.
 

 Judgment reversed arid the case remanded to the Supreme Court of Georgia, with directions to proceed
 

 In conformity to this opinion.
 

 The CHIEF JUSTICE dissented from this judgment.
 

 See the next case, and his opinion at page 668,
 
 infra.
 

 *
 

 Art. 5, § 17, paragraph 7.
 

 †
 

 15 Stat. at Large, 73; Act of June 25th, 1868.
 

 ‡
 

 Act of June 15th, 1870, 16 Stat. at Large, 863, 364.
 

 *
 

 Luther v. Borden, 7 Howard, 43, 47, 57; Rose
 
 v.
 
 Himely, 4 Crunch, 272; Gelston
 
 v.
 
 Hoyt, 3 Wheaton, 324; Id. 634; Williams v. The Suffolk Ins. Co., 13 Peters, 420.
 

 *
 

 Stewart
 
 v.
 
 Kahn, 11 Wallace, 506.
 

 *
 

 Act of June 15th, 1836, 5 Stat. at Large, 50.
 

 †
 

 Act of March 2d, 1867, 14 Id. 429; act of March 23d, 1867, 15 Id. 4.
 

 ‡
 

 Act of June 25th, 1868, lb. 73.
 

 §
 

 Act of July 15th, 1870, 16 Id. 364.
 

 ǁ
 

 Luther
 
 v.
 
 Borden, 7 Howard, 57.
 

 *
 

 4 Wallace, 552.
 

 *
 

 Cooley’s Constitutional Limitations, 289.