WEST PARK REALTY COMPANY, Appellant, vs. PORTH, imp., Respondent.

*February 9—March 8, 1927.*

*Corporations: Annual reports of domestic corporations: Forfeiture upon failure to file: Rescission of forfeiture: Powers of secretary of state: Dissolution of corporation: How accomplished.*

1. Provisions for the forfeiture of corporate rights and privileges under sec. 180.08, Stats., relating to the filing of annual reports by corporations, must be strictly construed, since forfeitures are not favored in the law.   p. 311.

2. The secretary of state is a mere ministerial officer possessing no judicial powers.   p. 312.

3. The failure of a corporation to file its annual report, as required by sub. (2), sec. 180.08, Stats., does not work a forfeiture of corporate rights and privileges *ipso facto,* but is a cause for forfeiture which can be enforced in accordance with the provisions of sec. 286.36, relating to actions which can be brought by the attorney general or by a private party in the name of the state, since sub. (7), sec. 180.08, authorizes the secretary of state to rescind the forfeiture on payment of the penalty and the filing of an affidavit.   'p. 313.

West Park Realty Co. v. Porth, 192 Wis. 307.

4. Where the rights and privileges of a corporation were forfeited in 1917 for failure to comply with secs. 180.01 to 180.40, Stats., regulating corporations, and in 1923 such rights and privileges were restored under sub. (7), sec. 180.08, a quit-claim deed in satisfaction of deficiency judgments in foreclosure proceedings, executed after the status of the corporation was restored, could not be challenged, since the corporation did not become extinct as a body corporate at the expiration of the three-year period under secs. 181.01 to 181.06, relating to the dissolution of corporations. p. 314.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

*W. C. Seefeld* of Milwaukee, for the appellant.

For the respondent there was a brief by *Roehr & Steinmetz* and *Walter A. John,* attorneys, and *Julius E. Roehr,* of counsel, all of Milwaukee, and oral argument by *Mr. John.*

DOERFLER, J. The plaintiff, in the year 1905, was organized under the laws of this state as a corporation for the purpose of buying and selling real estate, and subsequent to such organization it actually purchased considerable real property in the course of the conduct of its business. During the years 1913, 1914, and 1915 it incurred obligations for which it executed its notes, secured by mortgages upon its property, which securities the defendant *Porth* became the owner of by assignment. In the year 1921 and subsequent years prior to 1924, default having occurred in the payment of the principal and interest of the securities, foreclosure actions were begun, prosecuted to final judgment, the property sold, and deficiency judgments entered. The defendant *Porth* claims that after the foreclosure sales he became the owner of the title to the mortgaged premises and also of the deficiency judgments.

In the year 1916 the plaintiff failed to comply with the provisions of ch. 180 of the Statutes, and the secretary of state, on the 1st day of January, 1917, declared the corporate rights and privileges of the corporation forfeited, and entered such forfeiture in the records of his department.

West Park Realty Co. v. Porth, 192 Wis. 307.

On April 16, 1923, more than six years after said declaration of forfeiture, affidavits were presented to the secretary of state in an attempted compliance with sub. (7), sec. 180.08, Stats., and $25 was paid to such secretary of state, and thereupon such state officer rescinded the forfeiture and restored the corporation to all the rights and privileges which it formerly possessed.

On the 7th of May, 1923, the corporation, through its officers, executed a quitclaim deed of the premises described in the complaint to the defendant *Porth,* such deed reciting as a consideration the payment of one dollar and the satisfaction of the deficiency judgments obtained in the foreclosure proceedings. This action was thereafter begun to set aside such deed, upon the ground of a failure of consideration.

In support of plaintiff's contention the argument is advanced by its counsel that after the declaration of forfeiture by the secretary of state on January 1, 1917, the plaintiff merely continued to exist for a period of three years, pursuant to the provisions of ch. 181 of the Statutes, for the purpose of liquidating and winding up its affairs, and that upon the expiration of such three-year period it became extinct as a body corporate; that it lost all of its corporate franchises and privileges, and to all intents and purposes became defunct; that it follows as a necessary consequence that the attempted rescission of the forfeiture in 1923 was nugatory; that the plaintiff had no authority in 1924 to execute the quitclaim deed above referred to; and that the consideration recited in the deed failed.

Assuming that the plaintiff, under the facts and circumstances of the case, was in a position to bring the present action, the issues raised are both interesting and novel and involve a construction of chs. 180 and 181 of the Statutes. Ch. 180 of the Statutes of 1923 is entitled "Domestic Corporations: Organization and Powers." Ch. 181 is entitled "Dissolution and Reorganization."

The foregoing chapters make it clear that they were intended to serve different but distinct and specific purposes. Ch. 181 was adopted in its present form in 1849. It specifies the method to be pursued in winding up a corporation which has been dissolved, and embraces all corporations coming within the purview of the statute which have been dissolved either by legal action, by operation of law, by insolvency, by the acts of the parties, or by the expiration of the charter, and other causes. It clearly contemplates a liquidation of the assets, either by the officers and directors who were such officers or directors at the time of the dissolution, or by the court in judicial proceedings. In order to limit the winding up of the affairs of such corporation the legislature saw fit to fix a definite period of three years. This statute does not contemplate the continuance of the ordinary business of the corporation; on the contrary, an attempted violation of the statutory provision by the exercise of the powers originally possessed by it could be enjoined by either a creditor or a stockholder, and were this not so the very purpose of the statute would be defeated.

Ch. 180 was enacted over half a century subsequent to the adoption of ch. 181. The purpose of ch. 180 becomes clearly apparent when we consider its enactment from a historical standpoint. Prior to 1905 a gradual change had manifested itself in the business world, which consisted of an ever-increasing substitution of corporations in lieu of individual and partnership enterprises, and this was especially true in business concerns operating with a large amount of capital. The legislature realized not only what had occurred in the past, but the revolutionary trend of events concerning the future. In order, therefore, to furnish reliable information to creditors and to those contemplating business relations with a private corporation, ch. 180 was enacted. It is a mere regulatory measure. Regulation, however desirable, will fall short of its design unless it is

enforceable by legal means in the form of penalties provided for a violation. Experience has demonstrated the efficacy of the enforcement provisions. Notwithstanding the salutary purpose of the law and the serious consequences that may follow its violation, corporations at times, owing to the negligence of their officers or governing bodies, fail to perform their legal duties, and this is the dilemma in which the plaintiff found itself when it failed to file its annual report on the 1st day of January, 1916. The transaction of the business of a private corporation involves not only the interests of the stockholders and its creditors but also the public at large, and particularly such members of the public who had not previously dealt with the corporation but contemplate doing so in the future. And in view of the astounding increase in the method of doing business as is herein indicated, the forfeiture of the privileges and franchises of offending corporations might prove disastrous to the business interests of the public at large. Forfeitures are not favored in the law, and provisions for forfeitures must be strictly construed.

Taking sub. (2) of sec. 180.08 of the Statutes as standing alone, it may be plausibly argued that the failure to comply with the provisions thereof would operate as a forfeiture, and that the secretary of state acts merely as a ministerial officer in finding certain facts, which, if found, bring into operation the act of the legislature. In order, however, to arrive at the true intent of the legislature, we must construe the entire section as a whole. Sub. (7) of sec. 180.08 authorizes the secretary of state to rescind the forfeiture on the payment of a penalty of $25 and the filing of the affidavit required by said section. This in itself indicates that it was the legislative intent, not that the corporation had forfeited its franchises and charter, but that it might still be recognized as a valid operating legal entity upon compliance with certain conditions. If the corpora-

tion had actually forfeited its charter on the 1st of January, 1917, it could not legally transact business in the same manner in which it had operated prior to such forfeiture, and if, as counsel for the plaintiff contends, after the date last mentioned it could only operate in accordance with the provisions of ch. 181, then it could perform no other acts during a period of three years than those which might be necessary and incident to the winding up of the corporate business. In this respect the vital difference between chs. 180 and 181 becomes apparent. Ch. 180 in express terms contemplates that the corporation shall continue to operate and conduct its business after the declaration of forfeiture by the secretary of state, up to the time an application to rescind the forfeiture is made. And here it must be noted that no definite time limit is fixed within which such application for rescission may be made. The affidavit provided for in sub. (7) of sec. 180.08 in express terms must contain a statement that the corporation has not suspended its ordinary lawful business since its organization or *since the forfeiture,* or it must allege that the corporation at the time the forfeiture was declared held title or transferable interest in real estate. Both of these statements were included in the affidavit.

The secretary of state is a mere ministerial officer. He possesses no judicial powers, and in fact, if the legislature had attempted to vest him with such, the act would be unconstitutional and void. It therefore becomes apparent that when the legislature authorized the secretary of state to declare a forfeiture, it merely intended that such declaration should operate as a cause for forfeiture, which could be enforced in a proper action brought by the attorney general or by any private party in the name of the state, under the provisions of sec. 286.36 of the Statutes.

The question herein involved was presented to the supreme court of North Dakota in the case of *Farmers' State*

*Bank v. Brown,* 52 N. Dak. 806, 204 N. W. 673. The opinion in part reads as follows:

"The failure to pay the annual license fee does not *ipso facto* work a forfeiture of the corporate charter. At most, it affords *prima facie* evidence of the nonuser of the charter and might amount to a violation of the provisions of law by which it has incurred a forfeiture of its corporate rights, privileges, and franchises; but such a result would not follow until there had been a legal determination of the fact of violation. . . ."

We deem the logic of the *Brown Case* applicable to the instant case, and we approve of the same and adopt it as sound law. In this connection we call specific attention to the following portion of sub. (2) of sec. 180.08 of the Statutes, which reads: "In case said report is not filed by said January first, the corporate rights and privileges granted to such corporation *shall be forfeited.* . . ." Considering that portion of the section just quoted together with the other provisions of ch. 180, we are constrained to hold that what the legislature intended was not a forfeiture *ipso facto* but a cause for forfeiture, which could be enforced in accordance with the provisions of sec. 286.36.

Our view thus expressed is further fortified by cases in our own court, such as *Powers v. C. H. Hamilton P. Co.* 60 Wis. 23, 18 N. W. 20; *Sleeper v. Goodwin,* 67 Wis. 577, 31 N. W. 335; *Strong v. McCagg,* 55 Wis. 624, 13 N. W. 895; and *Stolze v. Manitowoc T. Co.* 100 Wis. 208, 75 N. W. 987, cited in respondent's brief. See, also, *Held v. Crosthwaite,* 260 Fed. 613, cited in respondent's brief. Further, it may be said that in those states where a forfeiture is declared under statutes similar to that of our own state, the acts contain a provision making it unlawful for any corporation in default to exercise the powers of such corporation or to transact its ordinary business, and they further provide that any exercise of corporate powers shall constitute a misdemeanor and be punishable by fine or im-

prisonment, or both.   See *Van Landingham v. United Tuna Packers,* 189 Cal. 353, 208 Pac. 973; also 8 Fletcher, Corp. § 5427.

We therefore conclude that inasmuch as the failure of the plaintiff to comply with the provisions of ch. 180 did not work *ipso facto* a forfeiture of the corporate rights and franchises, and that at the time it executed the deed in question which it is the object of this action to declare void and ineffectual it was exercising its usual and ordinary functions, that the consideration expressed in the deed constituted a valuable consideration, and that the deed vested in *Porth* all the right, title, and interest of the plaintiff in the property conveyed.

Plaintiff's counsel argues that the plaintiff corporation died a legal death on January 1, 1920; that to all intents and purposes it thereafter had no existence; in other words, was as dead as a natural person who had passed beyond this worldly sphere; that, being dead, it could not be resurrected; and yet plaintiff alleged in its complaint that it is a corporation duly organized and existing under the laws of the state of Wisconsin.   If at the time of the commencement of the action it was not dead but alive, the interesting question presents itself, when and how was it resurrected?   If it was defunct, and if after 1920 the assets remaining at that time became the property of the stockholders, then the stockholders should have been made parties.   On the other hand, if it had never lost its corporate franchises and privileges, then it was alive, to all intents and purposes, and the deed executed by it in 1923 constituted a valid transfer.   So that, whichever horn of the dilemma is taken, the plaintiff corporation would have no right to the relief herein prayed for.

*By the Court.*—Judgment affirmed.