Young Construction Co. v. Dunne.

No. 27,234.

The A. R. Young Construction Company et al., *Appellants,*
v. D. E. Dunne et al., as D. E. Dunne & Co., *Appellees.*

SYLLABUS BY THE COURT.

1. CORPORATIONS—*Forfeiture of Charter—Failure to Pay Fee and File Report.*
Where a corporation fails to pay a prescribed fee and to file an annual report as required by R. S. 17-701, within the time fixed by the legislature, the omission operates as a forfeiture of its charter and ends its existence when the forfeiture is declared by the state charter board.

2. SAME—*Forfeiture of Charter—Notice.* The order declaring a forfeiture for noncompliance of the requirements in the statute named, is legislative and administrative in character and the notice necessary to a judicial proceeding is not essential to the validity of the order of forfeiture.

3. SAME—*Forfeiture of Charter—Abatement of Action.* Upon the forfeiture of the charter of a corporation actions by or against it are abated, and no valid proceedings can be taken therein until a revivor is had in the manner provided by law.

4. SAME—*Forfeiture of Charter—Substitution of Receiver After Termination.*
Where no revivor of a defunct corporation has been granted, a receiver appointed by another court in an action brought against the corporation is not entitled to be substituted as plaintiff upon his application made after the existence of the corporation has terminated.

5. SAME—*Generally.* Other questions raised are held to be without merit.

Appeal from Sedgwick district court, division No. 1; J. EVERETT ALEXANDER, judge. Opinion filed March 12, 1927. Affirmed.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson,* all of Wichita, and *Charles M. Miller,* of Kansas City, Mo., for the appellants.

*Chester I. Long, Austin M. Cowan, Claude I. Depew, James G. Norton, W. E. Stanley, Thomas E. Elcock* and *James G. Martin,* all of Wichita, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the A. R. Young Construction Company against D. E. Dunne & Co., a partnership, to recover for a breach of a contract by the defendants to purchase improvement bonds of the city of Miami, Okla., which were to be issued and delivered in installments as the improvements on certain streets were completed. It was alleged that as each of the streets was completed and the officers of Miami issued bonds to plaintiff,

Abatement and Revival, 1 C. J. pp. 134 n. 69, 136 n. 88, 220 n. 19, 221 n. 30.
Corporations, 14a C. J. pp. 1092 n. 55, 1111 n. 57.

they were to be purchased and paid for by the defendant; that the total amount of bonds so issued amounted to $610,480.68, and that the defendants had agreed to buy all of them at the stipulated price of ninety per cent of their face value. It appears that defendants did buy and pay for $318,251.71 worth of the bonds, when they refused to take more of them upon the ground that it had been discovered that there was a lack of authority in the city under the laws of Oklahoma to issue such bonds as had been contracted for. It was alleged by plaintiff that defendant refused to accept and pay for $292,228.97; that plaintiff had found a market and disposed of $76,206 at eighty-five cents on the dollar, and therefore had sustained a loss on that amount of $3,810.33. For the remainder of the bonds, plaintiff alleged that their market value was eighty cents on the dollar, and that the default of defendant had caused a loss thereon of $21,602.33. In a separate cause of action plaintiff alleged that it was compelled to borrow money in order to carry on the improvements and earn the bonds, and that the loans so made cost them in interest the sum of $9,054.63, and also the sum of $1,900 as commission. For all of these separate amounts judgment was asked. The defendants, after setting up a general denial and specially denying that D. E. Dunne was a member of the partnership firm, alleged that the bonds refused were illegal, were issued in violation of the laws of Oklahoma, and that the bonds taken and paid for were purchased before the discovery of the illegality in them. They further alleged that a settlement was made between the parties about December 1, 1920, of the controversies in respect to the bonds, which was based on a valuable consideration and which discharged defendants from any liability on the contract. They also alleged that they own and hold an unsatisfied judgment against the plaintiff in the sum of $25,000 rendered by the circuit court of Jackson county, Arkansas, and that the plaintiff is entitled to a credit for that amount with interest at six per cent from October 17, 1923.

After the introduction of evidence as to the issuance and character of the bonds and also as to market value of such bonds, at different times, a question arose as to the right of plaintiff to bring the action because its charter had previously been declared forfeited and it was no longer a live corporation. Application was made to amend and substitute Cecil L. Newbold, receiver, as plaintiff, which was at first allowed over the objection of defendants. It appears that Warren Brothers had brought an action in the nature of a creditor's

bill in the federal court during the pendency and progress of this action and that a receiver was appointed therein, and by an *ex parte* order the receiver was directed to intervene in and prosecute this action. Evidence was taken relating to the forfeiture, and it was shown that on December 22, 1922, the charter of the corporation was declared to be forfeited for failure to file annual statements and pay the annual license fee for the year ending December 31, 1921. Plaintiff offered testimony tending to show that specific notice of the proposed action of the charter board was not given to the corporation, and also of a letter of the attorney-general on August 11, 1922, to the effect that he would sue for penalties within ten days unless payment was made. The court then sustained the objection of defendants, denied the amendment and substitution, stating that when it was first allowed the court was not informed as to the true state of affairs. It held that all orders made during the trial of the case were absolutely void, that the action had abated on December 22, 1922, upon the forfeiture of the charter of plaintiff and that the only authority it had in the premises was to dismiss the case without prejudice, and that was the judgment.

Instead of bringing a new suit in the name of the receiver, plaintiff concluded to submit on appeal the question as to the validity of the action of the trial court in the dismissal of the case.

The first question argued upon plaintiffs' appeal is as to the effect of the declaration of forfeiture by the state charter board. The pertinent part of the statute relating to forfeiture of the charter of such a corporation is:

"The failure of any domestic corporation to file the annual statement and to pay the annual fee herein provided for within ninety days of the time for filing and paying the same shall, in addition to other penalties, work the forfeiture of the charter of such corporation organized under the laws of this state, and the charter board may at any time thereafter declare the charter of such corporation forfeited." (R. S. 17-706.)

The plaintiff failed to file the annual statement required by the statute for the year 1921, and failed to pay the required fee for that year. Its default is not open to controversy. On the last day of 1922 the state charter board formally declared the forfeiture of plaintiff's charter. It is contended that the action taken was ineffective because no notice was given the corporation of the proposed action. It is said that the forfeiture is quasi-judicial in its nature and that reasonable notice is a requisite under the due process

Young Construction Co. v. Dunne.

clause of the federal constitution. Was notice to the officers of the corporation, other than that given by statute, essential to ending the corporate existence of the plaintiff? The corporation owed its existence to the state. The powers and privileges of the corporation were conferred upon conditions imposed by the legislature. Among these conditions were the payment of an annual fee and the filing of an annual statement showing its present officers, its capital stock authorized and issued, the value of, the stock, a list of its stockholders, the business in which it was engaged, and a complete detailed statement of its assets and liabilities. (R. S. 17-701.) These were important conditions, and when the corporation accepted the charter it consented to be bound by all the conditions prescribed by the legislature, and the statute itself became a part of the corporate contract. It is competent for the legislature to provide that a corporation shall lose its existence by acts or omissions, the forfeiture to be declared by administrative officers without the intervention of the courts. If the corporation violates the statutory conditions by acts or omissions which the legislature has in plain terms declared shall operate as a forfeiture upon a declaration of a board or of ministerial officers, the forfeiture is complete when the declaration is made. Since the legislature in unmistakable language provided that the conceded omissions of the plaintiff shall work a forfeiture of the charter, to be declared by the state charter board, the forfeiture must be regarded as legislative and administrative rather than judicial and no resort to the courts is necessary. That was substantially the view expressed in *Razor Co. v. Guymon,* 110 Kan. 745, 205 Pac. 635. There it was held that the legislature may provide for a legislative or administrative forfeiture as well as for a judicial one, and in syllabus 1 of the case it was said:

"It is within the power of the legislature to provide that the failure of a corporation to comply with certain prescribed requirements and duties shall work a forfeiture of its charter and end its corporate existence without the judgment of a court."

And it was further declared that the failure to make annual statements and pay a prescribed fee shall operate as a forefeiture of its charter, and when the declaration is made as the statute provides the existence of the corporation is ended. The prescribed steps named in the statute quoted must be regarded as a legislative and administrative forfeiture and not a judicial one, and therefore the notice required in judicial proceedings is not essential. In *Razor*

*Co. v. Guymon,* supra, the question of notice was not discussed inasmuch as it was not raised in the record, and hence it was said that in the absence of evidence to the contrary it would be presumed that the action of the state charter board was regularly and legally taken. Plaintiff needed no more notice than the statute afforded. It is not necessary to cite authorities to support the doctrine that everyone is presumed to know the law and to take notice of the provisions of a general act. Plaintiff was charged with notice of the statute quoted in relation to forfeiture of corporate charters, and was bound to know that if the fees were not paid and the annual report made within ninety days after the time for filing the same, in this case March 1, 1922, the state charter board was authorized to declare the forfeiture at any time after that date. With knowledge of the law and of its requirements, and also of the fact that the fee had not been paid nor the report made in compliance with the statute, before December 31, 1922, when the forfeiture was declared, the corporation is not in a position to complain of a lack of notice of the statutory requirements and the consequences of a default; nor that it did not have an opportunity to overcome the default or to offer excuses for noncompliance with the statute. It cannot be regarded as a denial of due process. In *Kaiser Land and Fruit Co. v. Curry,* 155 Cal. 638, which involved the forfeiture of a charter under a statute of California, it was held that the forfeiture was a legislative rather than a judicial function and that when the prescribed action was taken it worked a forfeiture. It was further held that the forfeiture did not operate as a violation of the due process clause of the constitution. In *Hancock v. City of Muskogee,* 250 U. S. 454, the court considered the question of the due process and held that where the inquiry was in its nature judicial, notice and an opportunity for a hearing were essential, and added:

"But they have no application to a case where, as in the case before us, full legislative power over the subject matter has been conferred by the state upon a municipal corporation. Where that has been done, a legislative determination by the local legislative body is of the same effect as though made by the general legislature."

In *Reetz v. Michigan,* 188 U. S. 505, where the court had before it a statute providing that a board of registration should inquire into and determine whether those engaged in the practice of medicine possessed the requisite qualifications, registration having been denied to an applicant, he contended that the action of the board was un-

constitutional in that he was denied due process of law, the question of notice was treated and the court held that inasmuch as the statute provided for meetings of the board at specified times and the applicant had an opportunity to attend the meetings, and had failed to do so, another notice was not a necessary element of due process of law and it was added:

"When a statute fixes the time and place of meeting of any board or tribunal, no special notice to parties interested is required . . . the statute is itself sufficient notice." (Syl. See, also, *Peck v. Linney,* 97 Wash. 103; *McClure v. Township of Oxford,* 94 U. S. 429; *Home Telephone Co. v. Los Angeles,* 211 U. S. 265.)

In behalf of plaintiff something is said to the effect that the state charter board was estopped to declare a forfeiture because of a letter written by the attorney-general to the plaintiff saying that he contemplated bringing an action against the corporation for penalties of $100 plus $5 per day for each day's omission after December 31, 1922, because of noncompliance with the statute, and stating that if compliance was not made before August 1, 1922, action would be commenced. That letter had no effect upon the forfeiture. Plaintiff was bound to take notice of the statute, and the action or statement of a single member of the board, even if it had gone to the extent of a promise to reconsider the forfeiture, would not operate as an estoppel. (*State Bank v. Bank Commissioner,* 110 Kan. 520, 204 Pac. 709.) No fees have yet been paid either by the corporation or the receiver, nor has the required report been made by either of them.

A question is raised as to the substitution of the receiver, Newbold, as plaintiff. The present action was commenced March 31, 1921. The action in the federal court in which Newbold was appointed receiver was not brought by Warren Brothers against the plaintiff until June 1, 1922. It appears that no action was taken in this action by the receiver until about the close of the trial, when it came to his attention that plaintiff's charter had been forfeited, a motion was made for the substitution of himself for the plaintiff. An *ex parte* order was first allowed, and three days later on his own application the order was vacated and set aside. At the close of plaintiff's evidence in this case, the motion to substitute was renewed. Testimony was then admitted showing the forfeiture of the charter rights of the corporation about four years before the application was made. In that connection the defendants demurred to

plaintiff's evidence and the court then denied the motion for substitution, and having found from the evidence that the charter had been forfeited in December, 1922, held all proceedings in the case since that time were void, and the action was dismissed without prejudice. The forfeiture of charter rights operated to abate the action. The existence of the corporation ended in 1922, and there has been no revivor or attempt at revivor since it became defunct. It was held in *Kansas, O. & T. Rly. Co. v. Smith,* 40 Kan. 192, 19 Pac. 636, that where a corporation was consolidated with another under a new name it ceased to exist and that an action brought by or against it before its consolidation could not afterwards be prosecuted by or against it or in its original name. See, also, *Cunkle v. Interstate Rld. Co.,* 54 Kan. 194, 40 Pac. 184; *Jonsson v. Erickson,* 108 Kan. 580, 196 Pac. 435; *First National Bank v. Colby,* 21 Wall. (U. S.) 609. No revivor was asked, as we have seen in this action, nor was there any attempt at a revivor in the federal court in which the receiver was appointed. The action in the federal court was against the corporation, and when it ceased to exist neither that court nor any other could make a valid order in the case before a revivor was obtained. It appears that the federal court granted an order in June 5, 1926, a day or two before the dismissal of the case, authorizing that officer to prosecute this action, but necessarily that order was without effect as the corporation was not then in existence. It is argued that under R. S. 60-415, substitution of the receiver should have been allowed. The section provides among other things that: "In case of any other transfer of interest the action may be continued in the name of the original party or the court or judge may allow the person to whom the transfer is made to be substituted in the action." The appointment of an ordinary chancery receiver, such as was designated in this case, did not operate as a transfer of title to or interest in the assets of the corporation or as an assignment of them. He had authority to take custody of the property as an officer of the court during the pendency of the action, and it did not effect a change of title or create a lien thereon. (*Chicago Union Bank v. Kansas City Bank,* 136 U. S. 223; *Quincy &c. Railroad Co. v. Humphreys,* 145 U. S. 82; *Bernheimer v. Converse,* 206 U. S. 516; High on Receivers, 4th ed., 208.) It is generally held that such a receiver is not authorized to proceed in his own name, but must proceed in the name of the person in whom the right of action existed

before his appointment was made. (High on Receivers, 4th ed., 248.) In applying the statute quoted relating to a transfer of interest, it has been held that it refers to a transfer by one of the parties to the action and not one that occurs by operation of law. (*Jonsson v. Erickson,* 108 Kan. 580, 196 Pac. 435.) The authorities relating to the death of a party after judgment have no application to cases like this where the life of a party ended before final judgment was rendered. The authorities already cited show that the provision relating to revivor applies to defunct corporations as well as to the death of persons. The forfeiture of the charter abated the action, and in the absence of a revivor or of grounds for the substitution asked the court had no alternative than to dismiss the action.

The judgment is affirmed.