145 P.2d 219

**STATE v. SUNSET DITCH CO. et al.**

**No. 4741.**

Supreme Court of New Mexico.

Jan. 19, 1944.

Everett M. Grantham, U. S. Dist. Atty., of Santa Fe, Frank E. Flynn, U. S. Dist. Atty., of Phoenix, Ariz., and Rodey, Dickason & Sloan, of Albuquerque, for appellants.

Edward P. Chase, Atty. Gen., and Fred E. Wilson, Sp. Asst. Atty. Gen., for appellee Inter-State Stream Commission.

MABRY, Justice.

Suit was brought by the State of New Mexico, plaintiff-appellee, against defendant-appellant corporation, and others named as officers thereof, to declare the corporation dissolved for failure to comply with the statute concerning annual reports, and to enjoin the corporation from functioning as such. From a decree in plaintiff's favor the defendants prosecute this appeal. The parties may hereinafter, at times, be referred to as "the State" and "the Company", respectively.

The Company was organized on Feb. 3, 1903, for the purpose of operating a ditch and irrigation works and supplying water to a certain area in Grant county, New Mexico, from the Rio Gila. The articles of incorporation recite that the capital stock of the corporation was to be $50,000, divided into 200 shares at par value of $25 per share. It was incorporated under C. 12, Laws 1887, secs. 468–492, Comp.Laws 1897. The chapter title of the enactment relates to "the formation of companies for the purpose of constructing irrigating and other canals and the colonization and improvement of lands." The articles of incorporation appear to follow the requirements laid down in the statute authorizing such corporations. The Company contends that it was never operated for profit, that it paid no dividends, that it derived revenue only from assessments against water users and that arising from water served by its ditches. Stock in the Company was issued and transferred from time to time, but whether such stock transfers in all cases were related to the land benefited, the record does not clearly disclose.

The corporation has continued to function to the time of this suit. No annual report was ever filed by the Company, and the State Corporation Commission on Feb. 19, 1940, by certificate, declared and held the corporation to be dissolved as of June 14, 1921, for violation of C. 185, Laws 1921, also hereinafter to be noticed.

As counsel for the Company in their able brief have suggested, it is appropriate to consider all assignments together following a general analysis of the problems they present rather than to discuss each one separately. These are appropriately

and conveniently grouped in the Company's brief as presenting five related issues, which are:

1. There is no evidence to support the district court's action in granting plaintiff's requested finding of fact No. 3 or in making the court's finding of fact No. 3, relating to the cancellation of the company's charter;

2. Laws 1921, C. 185, should be construed as not applicable to the appellant corporation;

3. Laws 1921, C. 185, is repugnant to Art. IV, S. 18, of the New Mexico Constitution;

4. Laws 1921, C. 185, if applied to the defendant-appellant corporation, would be void because contrary to U. S. Constitution, Art. I, S. 10, and N. M. Constitution, Art. II, S. 19, in impairing the obligation of contracts;

5. Laws 1921, C. 185, is repugnant to Amendment XIV of the U. S. Constitution and Art. II, S. 18, of the N. M. Constitution, in denying the defendant corporation the equal protection of the laws and due process of law; and

6. Laws 1921, C. 185, if applied to the defendant corporation would be void because contrary to the Fourteenth Amendment of the U. S. Constitution and Art. II, S. 18, of the N. M. Constitution, in depriving the defendant corporation of its property without due process of law.

The challenge to the trial court's finding of fact to the effect that the defendant Company, organized and registered as a corporation on Feb. 3, 1903, never filed any annual reports nor paid the required fees, is without merit. Whether the Company's charter was, or could be, dissolved ipso facto by Chap. 185, Laws of 1921, becomes the one important question presented. If the statute be self-executing, it may not become important, although a decision on this point is passed, whether the order of dissolution by the State Corporation Commission was entered on June 14, 1921, the effective date of the act, or nearly twenty years thereafter, as was the case.

■ The question posed under Point 2 is, likewise, without merit. If we can hold that the Company in question was organized and authorized to do business as a private corporation this question is disposed of; and we can, and must, so hold. The Company was obviously either a private or public corporation. The statutes which we deal with in this connection make no other classification. The Company was governed by the general corporation law.

"Those corporations are public which are created for public purposes only, connected with the administration of the government, and the interests and franchises of which are the exclusive property and domain of the government itself * * *. Private corporations are created for private as distinguished from purely public purposes, and they are not in contemplation of law public because it may have been supposed by the legislature that their establishment would promote either directly

or consequentially the public interest * * *. A railroad corporation, though engaged in a quasi-public business, is a private corporation, and the fact that the state owns a portion of the stock does not change its character. * * * The character of a corporation as public or private. is determined solely by the terms of its charter and the general law under which it was organized. * * *." 13 Am.Jur. 171–173, § 17.

The Company concedes that the act of 1905, C. 79, refers to irrigation companies, but contends that the vague and limited manner of reference thereto robs it of much of its force. With this principle we do not agree.

■ We look only to its articles of incorporation to determine whether the Company was organized for profit. The question is not whether the corporation, after being organized for such purpose, made a profit or even undertook to do so. The charter becomes the guide in distinguishing such corporations from ones organized solely for religious, charitable or benevolent purposes. We do not look to any specific acts, or results flowing from an exercise of its corporate powers, to determine the character of the corporation or the purposes for which it was organized. See State ex rel. Biel v. Royal Neighbors of America et al., 44 N.M. 8, 96 P.2d 705. Obviously, a corporation organized, as was this one, with capital stock divided into shares and sold and assigned in the course of doing business, was a private corpora-

tion organized for profit. It is agreed that the organization was effected under Laws of 1887, C. 12, authorizing "formation of companies for the purpose of constructing irrigating and other canals and the colonization and improvement of lands."

It may be true that it is not possible to give a precise and satisfactory definition of a public, as distinguished from a private, corporation (18 C.J.S., Corporations, p. 394, § 18) ; yet, the corporation with which we are now dealing could not reasonably be said to fall under any other classification but that of private.

■ Under the above standards we cannot escape the conclusion that appellant Company was a private, as distinguished from a public, corporation, and that the 1921 act in question would apply to it, if it can be said that under the law, and notwithstanding the constitutional objections relied upon, it was required to file an annual report. Annual reports are required of every corporation except those not organized for profit. Laws 1905, C. 79, § 48(1), Sec. 54-236, Comp.1941.

Thus appraising the corporation the State contends that by the Laws of 1905, C. 79, § 48(1), Sec. 54-236, Comp.1941, it was required to file annual reports; and, upon the failure to so do, the 1921 act provided such corporation "be and the same [is] hereby declared to be dissolved." Under the provisions of C. 112, Laws 1917, having failed to file any annual report, corporations governed by the act, forfeited their right to do business in the

state long before the enactment of Laws 1921, C. 185, now under attack as not applicable to appellant, if proper notice to them were given and no appropriate response made.

Under the provisions of the 1917 act, amendatory of the general corporation act of 1905, C. 79, it will be noticed that provision is made for the cancellation of the certificate of every domestic and foreign corporation, excepting those organized for religious, charitable and benevolent purposes and those not organized for profit, which shall not have made and filed its annual report within ninety days after notice from the State Corporation Commission. The record before us is silent upon the question of notice having been given under this 1917 statute, and we must assume none was given. The State contends that no particular significance is to be attached to the 1917 act, in any event. And, it is doubtless correct. The case must rest upon the much more narrow and simple question touching the constitutionality of the Laws of 1921, C. 185, as it applies to appellant.

Therefore, the Company being a private corporation, as distinguished from a public one, upon the passage of Laws 1921, C. 185, did it become subject to the terms of the act? The pertinent part of this statute provides: "Section 1. That all private corporations organized under the laws of the Territory of New Mexico which have refused or neglected to file the annual reports required by law in the office of the State Corporation Commission of New Mexico, be and the same are hereby declared to be dissolved, and the State Corporation Commission is hereby authorized and directed to strike the names of all such corporations from its index of live corporations."

Under many circumstances, judicial pronouncement, based upon a determination of the necessary fact, must precede dissolution of a corporation and abrogation of its charter; but there is authority for the proposition that in cases of legislative abrogation of charters of corporations belonging to a particular class, assuming the legislation to apply and the classification to be reasonable and not arbitrary, no judicial determination of the question is necessary. "It is undoubtedly within the power of a state legislature to declare that a corporation delinquent in making its public reports and in paying the prescribed taxes and license fees shall, ipso facto cease to exist and such legislation has been upheld as constitutional", it is stated in 16 Fletcher Cyc. Corporations (Perm. Ed.) Sec. 7997, page 697, citing a number of cases. Four-S-Razor Co. v. Guymon, 110 Kan. 745, 205 P. 635; Young Const. Co. v. Dunne, 123 Kan. 176, 254 P. 323; Citizens' Club v. Welling, 83 Utah 81, 27 P.2d 23; Boyce v. Hinkle, 139 Wash. 164, 245 P. 927. See also 13 Am.Jur. 1188, sec. 1377; 19 C.J.S., Corporations, p. 1423, § 1650.

This statute was doubtless intended to be self-executing, and, if constitutional, it was obviously a death sentence to such corpora-

tion organized prior to the end of the territorial regime (Jan. 6, 1912). It was a definite pronouncement of dissolution by the Legislature as to all corporations created prior to this date, although many such corporations might already be dead, if notice had been given and not obeyed, in the sense that they had forfeited their rights to do business in the state by non-compliance with the general corporation act of 1917 in the matter of filing annual reports. Laws 1917, Chap. 112.

It cannot be disputed that a reservation of power to amend or repeal the charter of a corporation, whether contained in the Constitution or statutes, becomes a part of the contract with the corporation and, to the extent of the reservation the grant to the corporation is qualified, so that the subsequent reasonable exercise of this power to amend or repeal cannot be regarded as an act impairing the obligation of the contracts. 7 Fletcher Cyc. Corporations (Perm. Ed.) 824, Sec. 3764; International Bridge Co. v. People of State of New York, 254 U.S. 126, 41 S.Ct. 56, 65 L.Ed. 176.

It cannot be doubted that a duty may be imposed upon corporations requiring them to make and file annual, or other, reports. Such legislation is upheld as the proper exercise either of the legislative reserved power over corporate charters (Deloria v. Atkins, 158 Mich. 232, 122 N.W. 559), or as proper exercise of the police power which cannot be surrendered in any event. See Pearsall v. Great Northern R.

Co., 161 U.S. 646, 647, 16 S.Ct. 705, 40 L.Ed. 838, 884; 2 Cooley's Const. Limitations, p. 1237.

Notwithstanding the points urged in support of reversal of the judgment below and all that has been said, our decision may well rest upon the determination of the two controlling questions, viz: (1) is Chapter 185 of the Laws of 1921 repugnant to and violative of Sec. 1 of the 14th Amendment to the U.S. Constitution, and Art. II, Sec. 18, of the New Mexico Constitution, in that it would deny to the appellant company "equal protection of the law"? And (2) has there been an impairment of obligation of contract in violation of the Federal or State Constitutions?

It will not be disputed that proper classification, in this as in other respects, of subjects of legislation is permissible and would not offend against either of the aforementioned constitutional provisions; but, there must be a reasonable and rational basis upon which any such differentiation in classification sought to be achieved, must rest.

The act in question, Chap. 185, Laws. of 1921, did not apply to all existing corporations which were delinquent in respect to making reports, etc.; it applied only to "private corporations organized under the laws of the territory of New Mexico." Thus it will be seen that the act makes the time of incorporation, rather than mere failure to file reports, the decisive factor in determining delinquency as it effects a dissolution of the corporation and forfeiture:

of its charter. We see no reasonable basis for the distinction.

■ Legislative classification based wholly upon time element when the time selected has no reasonable relation to the object of the legislation, has been held unreasonable and arbitrary, and repugnant to the provisions of the 14th Amendment to the Federal Constitution. Upon this and kindred points of arbitrary classification held unconstitutional see: Pabst Corp. v. City of Milwaukee, 190 Wis. 349, 208 N.W. 493, 45 A.L.R. 1169; Mayflower Farms v. Ten Eyck, 297 U.S. 266, 56 S.Ct. 457, 80 L.Ed. 675. It was held in the Ten Eyck case, supra, that, in the absence of any showing of reasonable basis for the classification made by the statute the court has no right to conjure up possible situations which might justify the discrimination.

■ It is elementary that such classifications must be reasonable and not arbitrary, and that the classification attempted in order to avoid the constitutional prohibition must be founded upon pertinent and real differences as distinguished from artificial ones. Mere difference, of itself, is not enough. Gulf, C. & S. F. R. Co. v. Ellis, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666; Colgate v. Harvey, etc., 296 U.S. 404, 56 S.Ct. 252, 80 L.Ed. 299, 102 A.L.R. 54; and, of course, corporations, as well as individuals, fall within the protection of the 14th Amendment. Liggett Co. v. Baldridge, 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 204; 14 Fletcher, Cyc. of Corps., 114.

It is not enough to say that corporations formed under territorial laws could be properly distinguished from those organized since statehood simply because of the age element, when age, under the circumstances, can have no genuine relevancy to any permissible object of classification. Many corporations, whether organized before or after Jan. 6, 1912, the date of statehood, are the same type of corporation, are formed under the same laws, possess like powers and present identical problems of supervision and control. No circumstances are presented in this case which would justify the statutory command that all pre-statehood corporations should be extinguished for certain conduct while an exactly similar corporation formed under the identical statute after statehood, should not.

As we understand it, appellant does not question the right of the state to require annual reports of corporations, whether organized under territorial or state laws, and regardless of whether there has been by charter, or by legislation or constitutional provision, a specific reservation of power to appropriately amend or alter either the laws or charter under which such corporations began to operate. But, it does properly urge, that any such requirement must be reasonably implemented with procedure which would not, by omitting notice or hearing or an opportunity to correct the default when not made in bad faith, completely destroy the corporation; particularly under

the circumstances here present where there may be entertained some doubt whether appellant corporation is amenable to the general corporation laws and therefore required to make such reports, in any event.

▅▅▅▅ If our holding upon the points which are the basis of our decision as herein pointed out did not bear the clear imprint of logical reasoning and we felt constrained to look further for support of our holding, the rule generally, although not universally, accepted, to the effect that in cases where no public detriment is involved a statute providing for forfeiture in case of abuse of its corporate powers (Commonwealth ex rel. v. United Warehouse Co., 293 Ky. 502, 169 S.W.2d 300) or of failure to perform some such statutory duty as making and filing annual reports, will be liberally construed, would, doubtless, compel that liberal application of the statute here. A number of cases hold the statutory requirement that corporation fees and taxes be paid in order for a corporation to enjoy the benefits of its franchise, is to be considered a revenue measure, thus, under many circumstances, liberalizing the rule in favor of the offending corporation. See Sale et al. v. Railroad Commission et al., 15 Cal.2d 612, 104 P.2d 38, 41; Rosenblum v. Dingfelder et al., 2 Cir., 111 F.2d 406; and, we might be constrained to look more carefully into the contention of appellant that under the 1921 act the State Corporation Commission itself may not have performed its full duty with reference to effectuating the legislative intent that the of-

fending corporations should be "dissolved". All forfeitures, we know, are in disfavor with the courts, and a forfeiture under the circumstances of this case would be so abhorrent that an escape from it should be earnestly sought.

Provision for forfeiture of corporate rights and privileges relating to filing annual reports must be strictly construed, since forfeitures are not favored. West Park Realty Co. v. Porth et al., 192 Wis. 307, 212 N.W. 651; and Cook on Corporations, (8th Ed.) Sec. 501 points out that "there is a strong tendency in the decisions, and a tendency which is deserving of the highest commendation, to limit the power of a legislature to amend a charter" even under the reserved power, which power clearly we do not have here.

▅▅▅▅ "Corporations are protected, as a rule, from the retroactive operation of laws. Where such provision is not afforded by constitutional authority, the courts, on principles of natural justice, will so construe all laws, including constitutional provisions, as intended to be prospective in their operations, unless a retroactive operation is clearly indicated". Schramm v. Done et al., 135 Or. 16, 293 P. 931, 933, citing Lewellyn v. Frick, 268 U.S. 238, 45 S.Ct. 487, 69 L.Ed. 934, 937. See, also, Citrus Growers' Development Ass'n, Inc., et al. v. Salt River Valley Water Users' Ass'n et al., 34 Ariz. 105, 268 P. 773.

It has been held that the defense that plaintiff corporation filed no proper annual report with the Secretary of State, being

technical, should not ·be unnecessarily extended. Mahon Co. v. Molin, 252 Mich. 606, 233 N.W. 431.

In Turner v. Western Hydro-Electric Co., 241 Mich. 6, 216 N.W. 476, it was held that the corporation charter in question would not automatically become forfeited and void by failure to file reports, the statute not being self-executing. Nor are we persuaded that because the company continued to operate as a corporation it should be held to have accepted the constitutional provision and laws subsequently enacted giving power to amend, alter or repeal as was the case in Drew v. Beckwith, Quinn & Co., 57 Wyo. 140, 114 P.2d 98, 115 P.2d 651. A different situation was there presented.

It is said in Thompson on Corporations (3rd Ed.) Sec. 2947, page 684, citing specific authority: "It is not every failure to perform the duty imposed upon a corporation that will work a forfeiture of its franchise. There must be some plain abuse of power by which the corporation fails to fulfill the design and purpose of its organization, and the acts of misuser or non-user must relate to matters which are of the essence of the contract between the state and the corporation, and they must be wrongful and repeated. There must be something more than accidental negligence, or excess of power, or mere mistake in the mode of exercising it".

The state relies upon the constitutional provision permitting the alteration, amendment or repeal by the Legislature of "all laws relating to corporations" and providing that "all corporations doing business in this state, may, as to such business, be regulated, limited or restrained by laws not in conflict with the constitution of the United States or of this constitution" Art. XI, Sec. 13; but the Attorney General and able special counsel for the state have been unable to convince us that such constitutional provision applies to corporations organized prior to statehood and under legislation and charter containing no such reservation of authority.

Mr. Justice Story in the celebrated Dartmouth College Case (Trustees of Dartmouth College v. Woodworth), 4 Wheat. 518, 712, 4 L.Ed. 629, took occasion to say, in speaking of the power of the Legislature to alter or amend the charter of a private corporation: "If the legislature mean[s] to claim such an authority, it must be reserved in the grant." The obligations of the contract may be impaired not only by the unconditional repeal of such charter and dissolution of the corporation, but as well by a statute which unreasonably limits its powers or imposes new conditions and new duties. 7 Fletcher, Cyc. of Corporations (Perm.Ed.) 802, Sec. 3661; Greenwood v. Union Freight Co., 105 U.S. 13, 26 L.Ed. 961. We held in Melaven v. Schmidt, 34 N.M. 443, 283 P. 900, in dealing with a corporation organized since statehood that Art. XI, Sec. 13 of the New Mexico Constitution was broad enough in language to include a corporate charter among the list of things named as subject to amendment.

This case, of course, was dealing with the question of the right to change the measure of the liability of a bank's stockholder where the bank was organized after the adoption of the State Constitution.

It seems that in the case of Herndon v. Hammons, etc., 33 Ariz. 88, 262 P. 620, 621, the court indicated that certain corporation laws enacted subsequent to the adoption of the Arizona Constitution could apply to corporations organized prior to statehood, since the Constitution of Arizona was prepared and voted upon while Arizona was still a territory and thereafter specifically approved by Congress before the state was admitted; that this amounted to and "was in effect an act of Congress establishing the Constitution as law, and not the act of a state"; and that Congress did, in fact, before Arizona became a state through the adoption of the Arizona Constitution "provide that charters theretofore granted by the territory could be amended by the new state, * * * and such Constitution, being legislation by Congress and not by the state, was not within the prohibition of Article I, § 10, of the Federal Constitution", with reference to impairing the obligation of contracts. It was suggested by counsel in that case that impairment of contract obligations referred to in Art. I, Sec. 10 of the Federal Constitution, does not operate as a restriction upon Congress itself, but only upon the states, citing in support Late Corporation Church Jesus Christ of Latter-Day Saints v. United States, 136 U.S. 1, 10 S.Ct. 792, 34 L.Ed.

478; First Nat. Bank v. Yankton County, 101 U.S. 129, 25 L.Ed. 1046. It seems, however, that the decision in the Arizona case did not rest upon such theory. In this connection, it might be noticed that such reasoning likewise found support in Shorter v. Cobb et al., 39 Ga. 285, but this Georgia case was overruled by the Supreme Court of the United States on the ground that Georgia was, in fact, a state and not a territory, when it adopted its Constitution of 1868. White v. Hart, 13 Wall. 646, 80 U.S. 646, 20 L.Ed. 685.

But were we to adopt such a view as that suggested, but not relied upon, in Herndon case, supra, and hold that the act of 1921 was not violative of the United States constitutional provision in question, such legislation would, nevertheless, under our interpretation that equal protection of the laws is not afforded, offend against Art. II, Sec. 18, of our State Constitution, the pertinent part of which is substantially in the words of the Federal Constitution, Amend. 14, Sec. 1.

We find in 7 Fletcher, Cyc. Corporations 846, Sec. 3687, the following treatment of the subject of repeal of corporation charters where the right has been appropriately reserved: "It has been held that the principle that the legislature cannot constitutionally exercise judicial powers, does not prevent the legislature from reserving the power to repeal the charter of a corporation for the violation thereof or for nonuser, misuser of its franchises, or other default by the corporation. Some of

the courts hold broadly that, where there is such a reservation, an inquiry by the legislature into the affairs and defaults of the corporation, for the purpose of determining whether the conditions have arisen upon which its charter may be repealed, is a legislative and not a judicial act, and hold, therefore, that the legislature can determine the question and repeal a charter without notice to the corporation and without the judgment of a court, and, further than this, that its determination is not reviewable by the courts. Other courts, while they hold that the legislature has the power to make such an inquiry and determination, and act upon the same, without notice to the corporation, hold that its action is not final, but may be reviewed by the courts. Other courts do not take either of these views, but hold that, while the legislature may reserve the power to repeal the charter of a corporation for nonuser or misuser, the determination of the question whether there has been such nonuser or misuser, or as to give rise to the right to repeal, is a judicial, and not a legislative function, and, therefore, that the legislature cannot repeal a charter under such a reservation of power without an investigation and judgment by a court, after due notice to the corporation. This view is the better supported by reason and authority."

The last of the three views above set out, which the author there states has the better support in reason and authority, would indicate the care with which many courts approach the question of corporate dissolution and cancellation of charter, even where the right is reserved. It is conceded that by the act of 1887, Chap. 12, under which appellant company was organized, no reports were required, nor was there any specific reservation in the act or the charter giving the right to alter, amend, "dissolve" or repeal; so, all the more care might be suggested.

 We hold that, within the constitutional interdiction, and as to appellant, equal protection of the law has been denied and the obligation of contract has been impaired.

A most interesting question is also presented by appellant's challenge to the constitutionality of Chap. 185, Laws of 1921, because offending against Art. IV, Sec. 18, of the New Mexico Constitution, wherein it is provided: "No law shall be revised or amended, or the provisions thereof extended by reference to its title only; but each section thereof as revised, amended or extended shall be set out in full." However, in view of the disposition made of the case upon another ground, we express no opinion upon the merit of such challenge; and, likewise, as to any other question raised and not here discussed, it need not be noticed.

The trial court was in error in giving judgment for the state, holding appellant corporation to have been dissolved and in enjoining the stockholders, agents, servants, attorneys of the company, and others from acting as a corporation.

The judgment is therefore reversed, with instructions to trial court to reinstate the cause upon the docket, set aside its judgment and decree of injunction heretofore made and entered, and to give judgment for appellant company.

And, it is so ordered.

SADLER, C. J., and BICKLEY, BRICE, and THREET, JJ., concur.